PETERSON, Judge.
James V. Rossi and Jeanne M. Rossi appeal a judgment in favor of Jerry T. Brown and Barbara E. Brown, the contract vendees of the Rossi home. We vacate the final judgment and remand.
The dispute concerns the interpretation of Standard N of the “Standards for Real Estate Transactions” set forth under the 1988 version of the Florida Association of Realtors and the Florida Bar “Contract for Sale and Purchase.” Standard N is set forth in its entirety as an appendix to this opinion.
The Browns exercised their right under the contract to a roof inspection, and the inspector found that two metal valleys were rusted through and that there was visible evidence of water leakage in two other metal valleys. He gave a written estimate of $3,675 to accomplish the repairs, the amount being within three percent of the sales price. The Browns delivered to the Rossis a letter with copies of the report and the estimate, demanding that the repairs be made.
Rossi had a different inspector examine the roof the day following Brown’s inspection. Rossi’s inspector found visible evidence of leakage or water damage and rusting on the valleys, but concluded that the valleys were not rusted through and that there was no leakage through the valleys because the “roof underneath is sufficient.” Based upon this report, the Rossis refused to have the metal valleys repaired or replaced, and their roofer made $200 worth of repairs. The sale did not close because of the dispute between the parties over the extent of the roof repairs the sellers were obligated to make pursuant to Standard N.
The Browns brought an action for the return of their deposit, and the court entered judgment for the Browns. The trial court concluded as a matter of law that Standard N affords the buyer the right to have the roof inspected by an appropriately licensed person “and to obtain from that person a binding proposal as to the cost of correcting any defective condition found which contributes to and causes any visible evidence of leaks or water damage.” The trial court also determined that, if a buyer’s inspection report shows defects, those defects must be repaired by the seller to the extent of three percent of the selling price of the residence. The trial court determined that the seller does not have a right to retain his own expert to make another inspection and to submit another opinion and estimate. The trial court concluded that this “would create a never-ending ‘battle of the experts.’ ”
We do not agree with the trial court’s construction of Standard N. Such a construction would subject the seller to an absolute although maximum liability of three percent of the purchase price by the buyer and his inspector. The opportunity for abuse is obvious if the inspections are to be one-sided. This comment is not meant to apply to anyone involved in the instant case, but it can be noted that neither the seller nor the inspector, who might anticipate being selected to make the re *617 pairs, can be relied upon to be wholly impartial — or correct for that matter. Further, a “battle of the experts” has become the norm in modern trials. Courts must resolve the issues upon which the experts differ; that is their job in the absence of a jury, no matter how difficult or complex the issue becomes. Deciding where the truth lies when two roofing contractors testify as to what is necessary to repair a roof falls on the low end of the scale of complexities usually present in modern trials. Since no resolution was made at the time of trial as to what repairs were necessary and whether the seller accomplished the repairs, we remand for that factual determination.
The Rossis also contend that the Browns did not give timely notice of the defects within the ten-day period described in Standard N and that they are therefore entitled to judgment. We find no merit in that contention. Rossi’s former attorney testified that he received timely written notice of the cost of repairs and roof inspection. In addition, there was testimony by Brown of timely delivery.
Rossi’s final issue concerns the trial court’s disallowance of the proffered expert testimony of a lawyer who was not involved in the transaction but who has a substantial practice in real estate law. The testimony proffered was the lawyer’s interpretation of Standard N. Rossi cites Guy v. Kight, 431 So.2d 653 (Fla. 5th DCA 1983), rev. denied, 440 So.2d 352 (Fla.1983), for the proposition that attorneys may testify concerning the interpretation of contracts. Guy is inapposite. In Guy, we held that any error in the admission of the testimony had been invited by the appellants and that any error was harmless. Of course, lawyers may testify as experts under proper circumstances. In re Estate of Lenahan, 511 So.2d 365, 372 (Fla. 1st DCA 1987) (Draftsman of will qualified as an expert may assist court in understanding complexities of case, but shall not be permitted to testify as to interpretation of language used in will since polestar of any will construction proceeding is the intent of the testator); Warwick, Paul & Warwick v. Dotter, 190 So.2d 596 (Fla. 4th DCA 1966) (In professional malpractice case based on attorney’s failure to attend divorce trial, testimony by lawyer regarding substantive and procedural law is admissible.). In the instant case, the testimony was not probative of the intent of the parties. It did not describe custom, trade, usage, or the circumstances surrounding the execution of the contract. The disal-lowance was proper. It was the trial court’s province to construe the contract.
We vacate the final judgment and remand for determination of the winner following the battle of the experts.
Final judgment VACATED; REMANDED.
DIAMANTIS, J., and FOWLER, R., Associate Judge, concur.
APPENDIX — STANDARD N
N. INSPECTION, REPAIR AND MAINTENANCE: Seller warrants that, as of 10 days prior to closing, the ceiling, roof (including the fascia and soffits) and exteri- or and interior walls do not have any visible evidence of leaks or water damage and that the septic tank, pool, all major appliances, heating, cooling, electrical, plumbing systems and machinery are in WORKING CONDITION. Buyer may, at Buyer’s expense, have inspections made of those items by an appropriately Florida licensed person dealing in the construction, repair or maintenance of those items and shall report in writing to Seller such items that do not meet the above standards as to defects together with the cost of correcting them, prior to Buyer’s occupancy or not less than 10 days prior to closing, whichever occurs first. Unless Buyer reports such defects within that time Buyer shall be deemed to have waived Seller’s warranties as to defects not reported. If repairs or replacement are required, Seller shall pay up to 3% of the purchase price for such repairs or replacements by an appropriately Florida licensed person selected by Seller. If the cost for such repairs or replacement exceeds 3% of the purchase price, Buyer or Seller may elect to pay such ex *618 cess, failing which either party may cancel this Contract. If Seller is unable to correct the defects prior to closing, the cost thereof shall be paid into escrow at closing. Seller will, upon reasonable notice, provide utilities service for inspections. Between Effective Date and the closing, Seller shall maintain Property including but not limited to the lawn and shrubbery, in the condition herein warranted, ordinary wear and tear excepted. Buyer shall be permitted access for Inspection of Property prior to closing in order to confirm compliance with this Standard.