722 So.2d 958 (1998)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,
v.
Victoria C. ADAIR, Respondent.
No. 98-2663.
District Court of Appeal of Florida, Third District.
December 30, 1998.
*959 James K. Clark, Miami, for petitioner.
Kuvin, Lewis, Restani & Stettin, P.A. and R. Fred Lewis, Miami, for respondent.
Before COPE, GREEN, and FLETCHER, JJ.
GREEN, Judge.
The petitioner, State Farm Mutual Automobile Insurance Company ("State Farm"), the defendant in the underinsured motorist action below, seeks certiorari review of a discovery order compelling it to produce an affidavit setting forth the amount paid to its expert physician for independent medical exams and treatment in other cases for the past three years.[1] Specifically, the order directed that:
[State Farm] shall [within] 10 days ... produce [an] affidavit setting forth [the] amount paid to Dr. Glatzer [within the] last 3 [years] if separation [can be made] as to how much for exams, how much for medical treatment, said disclosure shall so indicate[.]
We grant the petition and quash the order as we conclude that it departs from the essential requirements of the law and leaves the petitioner with no adequate remedy on appeal.
The respondent, Victoria C. Adair, claims to have received very severe injuries as a result of a motor vehicle accident occurring on December 2, 1996. At the time of the accident, both she and the tortfeasor were insured on a primary basis with State Farm. Additionally, Adair had underinsured motorist coverage with State Farm in the amount of $100,000 and excess underinsured motorist coverage with another named defendant insurer, State Farm Fire and Casualty Insurance Company, in the amount of $1,000,000. After the tortfeasor's policy limits in the amount of $15,000 was tendered to and accepted by Adair with the permission of both of the named defendant insurers, Adair sought underinsured and/or excess coverage in this cause.
Both of the defendant insurers had Adair examined on two separate occasions by Dr. Richard Glatzer, an independent medical examiner they retained in this case. Therefore, in an effort to demonstrate Dr. Glatzer's bias in this cause, Adair propounded a request for production seeking information concerning the extent of Dr. Glatzer's involvement with State Farm and the amount of money paid by State Farm for his medical services in other cases.[2] State Farm timely *960 objected to this request citing to this court's decision of Carrera v. Casas, 695 So.2d 763 (Fla. 3d DCA 1997). State Farm argued that the request was overly broad, burdensome and requested information beyond the scope of that which is permitted under rule 1.280, Florida Rule of Civil Procedure. The trial court overruled State Farm's objections and compelled its compliance to the request pursuant to Allstate Insurance Company v. Boecher, 705 So.2d 106 (Fla. 4th DCA), review granted, 719 So.2d 286 (Fla.1998), to which the fourth district certified direct conflict with our Carrera decision. Id. at 107. We conclude that the trial court's failure to follow Carrera was a departure from the essential requirements of the law.
In the aftermath of the supreme court's decision in Elkins v. Syken, 672 So.2d 517 (Fla.1996)[3], rule 1.280(b)(4)(A)(iii), Florida Rules of Civil Procedure was amended, effective January 1, 1997, to outline the scope and parameters of discovery that a party could obtain about a person expected to be called as an expert witness at trial. According to the rule as amended:
(iii) A party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial:
1. The scope of employment in the pending case and the compensation for such service.
2. The expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.
3. The identity of other cases, within a reasonable time period, in which the expert had testified by deposition or at trial.
4. An approximation of the portion of the expert's involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services.

An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents.
Id. (emphasis added). After the amendment to this rule, we construed the limitations contained therein to be applicable both to discovery requests propounded directly to the expert witnesses themselves as well as to the opposing parties retaining the expert witnesses. See Carrera, 695 So.2d at 764-65. Thus, in Carrera, as in this case, where one party sought to discover from the opposing party the amount paid to its expert witness for services rendered in other cases over a period of time, we deemed the request to exceed the permissible scope of both rule 1.280(b)(4)(A)(iii) and Elkins, from which the rule was derived. Carrera, 695 So.2d at 764. We therefore granted the petition for certiorari and quashed the order under review.
After our Carrera decision, the fourth district in Boecher was presented with the identical issue of whether one party could discover the renumerative amount paid by *961 the opposing party to its expert witness over a period of time. In that case, the respondent Boecher had propounded interrogatories to petitioner Allstate seeking to ascertain the amount of fees Allstate had paid its expert during the preceding three years. When the trial court overruled Allstate's objections to this discovery, Allstate petitioned the fourth district for certiorari review. Allstate argued that since under Florida Rules of Civil Procedure rule 1.280(b)(4)(A)(iii) as amended, Boecher clearly could not obtain this information directly from its expert witness, he sought to circumvent the rule by seeking to discover the information from Allstate as a party defendant. Boecher, 705 So.2d at 107. Allstate further pointed out that we had refused to permit this tactic in our Carrera decision. The fourth district expressly disagreed with our Carrera decision and denied the petition. Essentially, the court concluded that: (1) the Elkins decision, upon which rule 1.280(b)(4)(A)(iii) is based, addressed only discovery propounded directly to expert witnesses, not parties to the litigation; and (2) the text of the amended rule is expressly directed not to parties but, again, only to discovery from expert witnesses. Id.
With all due respect to our learned sister court, while it is certainly true that Elkins did factually involve and address concerns about the discovery of financial information propounded directly to the expert witness, the limitations contained in rule 1.280(b)(4)(A)(iii) make no distinction between discovery requests propounded directly to the experts and discovery requests propounded to parties. The rule clearly reads:
"[A] party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial[.]"
Fla. R. Civ. P. 1.280(b)(4)(A). This language is all inclusive and does not, on its face, purport to make the distinction urged by the fourth district in Boecher. Unless our supreme court elects to amend this rule and make this distinction, we conclude that this rule is applicable to discovery propounded both to the expert witness and an opposing party. For this reason, we certify conflict with the fourth district.
Thus, because the order under review in this case is directly contrary to our binding Carrera decision, we grant the petition and quash the order under review.[4] Conflict certified.
NOTES
[1] We have jurisdiction to entertain review of this discovery order by certiorari review. See Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla. 1995); Fortune Ins. Co. v. Santelli, 621 So.2d 546, 547 (Fla. 3d DCA 1993).
[2] Specifically, the information sought included the following:

1. List documents showing identity of cases in the last three (3) years Richard Glatzer, M.D., and/or his professional association was retained to perform independent medical examinations, compulsory physical examinations, PIP examinations, medical record review(s) of claimant(s), plaintiff(s) and/or insured(s).
2. List documents showing the number of times in the past three (3) years Richard Glatzer, M.D. and/or his professional association has been retained to perform independent medical examinations, compulsory physical examinations and/or PIP examinations on insured(s), plaintiff(s) and/or claimant(s).
3. List documents showing the amount of money paid to Richard Glatzer, M.D., and/or his professional association in the last three (3) years for performing independent medical examinations, compulsory medical examinations, PIP examinations and medical record review(s) on claimant(s), plaintiff(s) and/or insured(s).
4. List documents showing the amount of money paid to Richard Glatzer, M.D. and/or his professional association in the last three (3) years to attend trial, depositions and arbitrations for the purposes of testifying to medical expert opinions.
[3] This decision approved the en banc opinion of this district court in its entirety.
[4] In passing, we remind the trial bench that while it is certainly at liberty to disagree with the binding precedent of its district and state the reasons for its disagreement in its orders, judgments, etc. for the district court's consideration, it is nevertheless bound by such precedent assuming it is not contrary to existing supreme court precedent. See State v. Bamber, 592 So.2d 1129, 1131 (Fla. 2d DCA 1991); Pimm v. Pimm, 568 So.2d 1299, 1299 (Fla. 2d DCA 1990); Chapman v. Pinellas County, 423 So.2d 578, 580 (Fla. 2d DCA 1982).