733 So.2d 993 (1999)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Robert BOECHER, Respondent.
No. 92,436
Supreme Court of Florida.
April 22, 1999.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, Florida, and Robert R. Reynolds, IV of Dickstein, Reynolds & Woods, West Palm Beach, Florida, for Petitioner.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, L.L.P., West Palm Beach, Florida, for Respondent.
PARIENTE, J.
We have for review Allstate Insurance Co. v. Boecher, 705 So.2d 106 (Fla. 4th DCA 1998), in which the Fourth District certified conflict with Carrera v. Casas, 695 So.2d 763 (Fla. 3d DCA 1997), regarding *994 whether this Court's decision in Elkins v. Syken, 672 So.2d 517 (Fla.1996), or Florida Rule of Civil Procedure 1.280(b)(4)(A)(iii) prevents discovery requests from being propounded directly to a party regarding the extent of that party's use of and payment to a particular expert. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We conclude that neither our decision in Elkins nor Florida Rule of Civil Procedure 1.280(b)(4)(A)(iii) prevents this type of discovery and therefore approve the result in Boecher.
The relevant facts are set forth in the Boecher opinion denying certiorari review of the trial court's order on discovery:
This is a suit by the alleged victim of an accident against Allstate Insurance, his uninsured motorist carrier. On the basis that Allstate would call Biodynamics Research Corporation (an accident reconstruction and injury causation expert employed by the UM carrier) as an expert in this case, the claimant propounded interrogatories to Allstate as to information concerning the relationship between the UM carrier and Biodynamics. The questions sought the identity of cases in which Biodynamics had performed analyses and rendered opinions for Allstate nationally and in the preceding three years. The questions also sought to learn the amount of fees Allstate had paid Biodynamics nationally and during the preceding three years.
Boecher, 705 So.2d at 106.
The trial court overruled Allstate's objections:
Because the discovery in question was directed to Allstate, a party, and not to the expert, the trial court found inapplicable Elkins v. Syken, 672 So.2d 517 (Fla.1996), in which the supreme court approved a district court's decision quashing, as overly burdensome, an order requiring expert witness physicians to produce tax records and information regarding patients examined for litigation purposes. The trial court reasoned that requiring such discovery from a party was not as "invasive" as requiring it directly from the expert.
Id. at 106-07. The Fourth District agreed with the trial court based on its reading of Elkins, the policy concerns of that decision, and the language of rule 1.280(b)(4)(A)(iii). See id. at 106-08; see also State Farm Mut. Auto. Ins. Co. v. Berg, 721 So.2d 835 (Fla. 5th DCA 1998) (denying a petition for certiorari review, citing Boecher).
In Carrera, the conflict case, one party sought to discover from the opposing party the amount the opposing party paid to their expert witness in other cases where the party had retained the expert. The Third District did not address the relevancy of the request but determined that the request exceeded the permissible scope of the rule and Elkins. See Carrera, 695 So.2d at 764-65. In State Farm Mutual Automobile Insurance Co. v. Adair, 722 So.2d 958, 960-61 (Fla. 3d DCA 1998), the Third District reaffirmed its decision in Carrera and its disagreement with Boecher.
The issue presented for our review is whether a party is prohibited from obtaining discovery from the opposing party regarding the extent of that party's relationship with an expert. We consider only the conflict issue. We specifically do not decide whether, as Allstate contends, the discovery sought in this case was unduly burdensome.[1] We note, however, that at the time the Fourth District rendered its decision in Boecher, there were no affidavits, depositions, or other sworn testimony in the record to support Allstate's claims of undue burden. 705 So.2d at 108.[2]
*995 As stated in the seminal case of Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 111 (Fla.1970), "[a] primary purpose in the adoption of the Florida Rules of Civil Procedure is to prevent the use of surprise, trickery, bluff and legal gymnastics." See also Schlagenhauf v. Holder, 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (rules of discovery should be afforded "`broad and liberal treatment' to effectuate their purpose that" trials should not be "`carried on in the dark'") (quoting Hickman v. Taylor, 329 U.S. 495, 501, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Our rules of civil procedure broadly allow parties to obtain discovery of "any matter, not privileged, that is relevant to the subject matter of the pending action," whether the discovery would be admissible at trial, or is merely "reasonably calculated to lead to the discovery of admissible evidence." Fla. R. Civ. P. 1.280(b)(1).
In Surf Drugs, we recognized four exceptions to the general rule requiring complete discovery that are still applicable today:
(1) The subject matter of the discovery procedure must be relevant to the cause.
(2) Discovery procedures may not be used or conducted to harass or embarrass litigants or witnesses or for malicious purposes.
(3) The inquiry must not invade the ancient and necessary right of privileged communications between lawyers and clients.[[3]]
(4) The work product of the litigant, his attorney or agent, cannot be examined, absent rare and exceptional circumstances.
236 So.2d at 111-12 (footnotes omitted). Further, rule 1.280(c), entitled "Protective Orders," allows a party or the person from whom discovery is sought "for good cause shown" to obtain a court order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires." Fla. R. Civ. P. 1.280(c).
This Court has not shrunk from condemning any practice that "undermines the integrity of the jury system which exists to fairly resolve actual disputes between our citizens." Dosdourian v. Carsten, 624 So.2d 241, 243 (Fla.1993); see also Government Employees Ins. Co. v. Krawzak, 675 So.2d 115, 118 (Fla.1996). Only when all relevant facts are before the judge and jury can the "search for truth and justice" be accomplished. Dodson v. Persell, 390 So.2d 704, 707 (Fla.1980). As was observed in Dosdourian, "[u]nder our adversary system a jury can usually assume that the parties and their counsel are motivated by the obvious interests each has in the litigation," but, when the alignment of interests is unclear, "[t]he fairness of the system is undermined." 624 So.2d at 243.
With these guiding principles providing the framework for our modern discovery practice and the trial of a lawsuit, we examine our decision in Elkins. In Elkins, the discovery requests in the consolidated cases were directed not to the parties, but to the expert medical witnesses who had performed compulsory physical examinations (IMEs)[4] of the plaintiffs. The discovery orders required the physicians to produce the number of IMEs performed by them in the preceding years, the amount of income and percentages of *996 income earned from IMEs, the number of IME exams performed for insurance carriers and for defense attorneys, the identity of every person the expert had examined at the request of defense counsel, as well as all billing and payment information related to examinations and opinions rendered at the request of any insurance company or law firm. See Elkins 672 So.2d at 519-20.
The en banc court of the Third District quashed the trial court's orders, finding the requests to the defense expert physicians to be unduly burdensome, while yielding "little useful information." Syken v. Elkins, 644 So.2d 539, 545 (Fla. 3d DCA 1994). We quoted with approval the Third District's observations that
decisions in this field have gone too far in permitting burdensome inquiry into the financial affairs of physicians, providing information which "serves only to emphasize in unnecessary detail that which would be apparent to the jury on the simplest cross-examination: that certain doctors are consistently chosen by a particular side in personal injury cases to testify on its respective behalf."

The production of the information ordered in the cases before us causes annoyance and embarrassment, while providing little useful information. In Syken, the court ordered additional discovery which, in light of the doctor's affidavit, is only duplicative, annoying and oppressive. In Plaza, the information necessary to demonstrate the basis for a claim of bias is most likely readily available through oral or written deposition without intrusive and improper examination of the doctor's 1099 forms and federal income tax returns. The least burdensome route of discovery, through oral or written deposition, was simply not followed.

Elkins, 672 So.2d at 521-22 (quoting Syken, 644 So.2d at 545) (citations omitted) (emphasis supplied). The Third District set forth eight criteria[5] to be followed in seeking financial information from an expert "in an effort to prevent the annoyance, embarrassment, oppression, undue burden, or expense, claimed on behalf of the medical experts." Id. at 521 (quoting Syken, 644 So.2d at 546-47) (emphasis supplied). This Court subsequently adopted those criteria. See Elkins, 672 So.2d at 522.
In rejecting the argument that the information was necessary to explore the bias of the expert witness, this Court balanced the probative value of the information sought against the annoyance and embarrassment to the expert physicians caused by the discovery requests. See id. at 521-22. The Court concluded that the Third District's criteria struck a "reasonable balance *997 between a party's need for information concerning an expert witness's potential bias and the witness's right to be free from burdensome and intrusive production requests." Id. at 522. In striking this balance, this Court observed that it is "essential" to keep in mind the purpose of discovery, which is "to eliminate the element of surprise, to encourage settlement of cases, to avoid costly litigation, and to achieve a balanced search for the truth to ensure a fair trial." Id.
To the extent that we strove in Elkins to achieve a balance between the need for information concerning potential bias and the right of the expert to be free from intrusive requests, the analysis of the competing interests in this case is qualitatively different. We conclude that where the discovery sought is directed to a party about the extent of that party's relationship with a particular expert, the balance of the interests shifts in favor of allowing the pretrial discovery.
On one side of the scale, we focused in Elkins on protecting the rights of the expert against unduly intrusive requests. We expressed concern for the expert having to divulge matters regarding personal financial privacy and further expressed concern for the burden imposed on the expert of compiling the requested information. See id. at 521-22. We concluded that such expansive discovery could have a "chilling effect" on a party's ability to obtain doctors willing to testify. Elkins, 672 So.2d at 522.
None of these concerns are present when the discovery sought is from the party who has employed the expert regarding the extent of that party's relationship with the expert and the financial remuneration paid by the party to the expert witness over a period time. The opposing party has no corresponding "right" to prevent this discovery.
On the other side of the scale, we considered in Elkins the probative value of the information sought where the expert was employed by that party for the pending case. However, we acknowledged the need for information concerning the potential bias of an expert witness. See id. at 522. We concluded that little useful information would be obtained to justify broad discovery concerning an expert's financial matters.
Unlike the information requested in Elkins, which related to the extent of the expert's relationship with others, the specific information sought from Allstate in this case pertains to the expert's ongoing relationship with Allstate. We note that cases from other jurisdictions demonstrate the existence of longstanding and extensive relationships between parties and their expert witnesses. See, e.g., Brown v. Dobbs, 691 N.E.2d 907 (Ind.Ct.App.1998) (observing the "symbiotic" relationship between Biodynamics and State Farm); Eccleston v. State Farm Mut. Ins. Co., 587 N.W.2d 580 (S.D.1998) (observing that State Farm paid $7.5 million to Biodynamics between 1990 and 1995).
The information sought here would reveal how often the expert testified on Allstate's behalf and how much money the expert made from its relationship with Allstate. The information sought in this case does not just lead to the discovery of admissible information. The information requested is directly relevant to a party's efforts to demonstrate to the jury the witness's bias.
The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive *998 to continue the financially advantageous relationship.
Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process. As we observed in Krawzak, we take "a strong stand against charades in trials." 675 So.2d at 118. To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert. This limitation thus has the potential for undermining the truth-seeking function and fairness of the trial. See Dosdourian, 624 So.2d at 243. Thus, we conclude that the jury's right to assess the potential bias of the expert outweighs any of the competing interests expressed in Elkins.
Although Allstate may not want the plaintiff to discover information regarding the extent of the relationship between Biodynamics and Allstate, as Judge Farmer so aptly observed, that information would be "indisputably relevant and meaningful." 705 So.2d at 107. Unlike the circumstances discussed in Elkins, 672 So.2d at 521-22, there are no compelling policy concerns to prevent discovery from the party who possesses the information. For all of these reasons, we conclude that Elkins should not be extended to limit the discovery sought from the party in this case.
We now turn to whether the discovery is otherwise prohibited based on rule 1.280(b)(4)(A)(iii). The Fourth District in Boecher concluded that the rule restricted only discovery obtained directly from experts. 705 So.2d at 107. The Third District in Carrera and Adair concluded that the rule makes no distinction and restricts discovery concerning experts, whether obtained from the party or from the expert. See Adair, 722 So.2d at 961; Carrera, 695 So.2d at 764-65.
Rule 1.280(b)(4)(A)(iii), promulgated in response to Elkins, was "intended to avoid annoyance, embarrassment, and undue expense"[6] to the expert. Fla. R. Civ. P. 1.280 committee notes (1996). It is a subdivision of the rule governing the "[d]iscovery of facts known and opinions held by experts." Fla. R. Civ. Pro. 1.280(b)(4). Although Elkins was limited on its facts to medical experts, rule 1.280(b)(4) is applicable to all experts. See id.
A reading of rule 1.280(b)(4) in its entirety reveals an intent to restrict the information that can be discovered from the expert, even though the discovery is answered *999 by the party. For example, the rule states: "[T]he expert shall not be required to disclose his or her earnings," and "[a]n expert may be required to produce financial and business records only under the most unusual and compelling circumstances." Fla. R. Civ. P. 1.280(b)(4)(A)(iii).
In this case, Boecher attempted to discover facts known directly by Allstate concerning the extent of Allstate's relationship with its expert witness. We find no indication from either the language of rule 1.280(b)(4) or our opinion in Elkins that the rule was intended to shield a party from revealing the extent of its relationship with an expert witness. To the extent that the rule can be read to place a blanket bar on discovery from parties about information they have in their possession about an expert, including the party's financial relationship with the expert, we direct the Civil Procedure Rules Committee to advise the Court whether changes to the wording of the rule are necessary to clarify the Court's intent in adopting rule 1.280(b)(4)(A)(iii).

Availability of Certiorari Relief
We further note that Boecher, Carrera, and Adair all involved petitions for certiorari. In Boecher the Fourth District denied relief, as opposed to dismissing the petition, indicating that it had considered the merits of the petition. See Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996) (explaining the difference between denying and dismissing a petition for certiorari relief). In Carrera and Adair, certiorari relief was granted.
In Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1098 (Fla.1987), this Court explained the applicable limits of the use of petitions for writs of certiorari to appeal an order granting discovery. We described certiorari relief as an "extraordinary remedy" that "should not be used to circumvent the interlocutory appeal rule which authorizes appeal from only a few types of non-final orders." Id. at 1098. We observed that orders granting discovery had traditionally been reviewed by certiorari, because when discovery is wrongfully granted "the complaining party is beyond relief." Id. at 1099. However, we concluded that not every erroneous discovery order creates certiorari jurisdiction in an appellate court, and focused on "irreparable harm" as the governing standard. Id. at 1099 (emphasis supplied). The Court found illustrative of this type of discovery order one that would let the "cat out of the bag" and provide the opponent material that could be used by an unscrupulous litigant to injure another person. Id. at 1100.
More recently, in Allstate Insurance Co. v. Langston, 655 So.2d 91, 94-95 (Fla. 1995), this Court, citing to Martin-Johnson with approval, explained that certiorari is the appropriate remedy when a discovery order "departs from the essential requirements of law, and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal." The Court echoed the holding in Martin-Johnson that not every erroneous discovery order creates certiorari jurisdiction because some orders are subject to adequate redress on appeal from the final judgment. See id. The Court disapproved contrary decisions from the appellate courts to the extent they could be interpreted as "automatically equating irrelevant discovery requests with irreparable harm." Id. at 95.
Although approving the Fourth District's analysis of certiorari jurisdiction, the Court also quashed the district court's decision under review "to the extent that it permit[ted] discovery even when it has been affirmatively established that such discovery is neither relevant nor will lead to the discovery of relevant information." Id. Apparently, this language in Langston caused at least one appellate court to experience "an increase in the number of petitions for certiorari seeking review of discovery orders." Eberhardt v. Eberhardt, 666 So.2d 1024, 1024 (Fla. 4th DCA 1996). *1000 Judge Klein concluded in Eberhardt that this Court's decision in Langston did not expand certiorari review in the discovery context. Id. at 1025. We agree with Judge Klein's analysis in Eberhardt and reiterate that Martin-Johnson properly sets forth the parameters for certiorari relief in pretrial discovery.
In conclusion, we approve the result in Boecher and disapprove the Third District's contrary opinions in Carrera and Adair.
It is so ordered.
HARDING, C.J., WELLS and ANSTEAD, JJ., and KOGAN, Senior Justice, concur.
SHAW, J., and OVERTON, Senior Justice, concur in result only.
NOTES
[1] We also do not address the majority's observations regarding the ease of compiling the requested information in this computer age. See Allstate Insurance Co. v. Boecher, 705 So.2d 106, 108 (Fla. 4th DCA 1998).
[2] Because it was not before the Fourth District, we do not consider the record from the proceedings in the trial court regarding Allstate's continued assertion that the requested discovery was burdensome. Those proceedings took place after the Fourth District's decision and after the petition for review was filed in this Court.
[3] The scope of the recognized privileges is not restricted to the attorney-client privilege. See generally Fla. R. Civ. P. 1.280(b)(5).
[4] Although still referred to as an IME, which stands for "independent medical examination," the rules of civil procedure recognize that the expert is no longer considered "independent," but rather an expert hired by the party requesting the compulsory court-ordered examination pursuant to Florida Rule of Civil Procedure 1.360(a). Thus, rule 1.360(c) specifically provides that the witness "shall not be identified as appointed by the court."
[5] 1. The medical expert may be deposed either orally or by written deposition.

2. The expert may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be.
3. The expert may be asked what expert work he or she generally does. Is the work performed for the plaintiffs, defendants, or some percentage of each?
4. The expert may be asked to give an approximation of the portion of their professional time or work devoted to service as an expert. This can be a fair estimate of some reasonable and truthful component of that work, such as hours expended, or percentage of income earned from that source, or the approximate number of IME's that he or she performs in one year. The expert need not answer how much money he or she earns as an expert or how much the expert's total annual income is.
5. The expert may be required to identify specifically each case in which he or she has actually testified, whether by deposition or at trial, going back a reasonable period of time, which is normally three years. A longer period of time may be inquired into under some circumstances.
6. The production of the expert's business records, files, and 1099's may be ordered produced only upon the most unusual or compelling circumstance.
7. The patient's privacy must be observed.
8. An expert may not be compelled to compile or produce nonexistent documents.
Syken v. Elkins, 644 So.2d 539, 546 (Fla. 3d DCA 1994) (footnotes omitted), quoted in Elkins v. Syken, 672 So.2d 517, 521 (Fla.1996).
[6] The rule states:

Discovery of facts known and opinions held by experts ... may be obtained only as follows:
. . . .
(iii) A party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial:
1. The scope of employment in the pending case and the compensation for such service.
2. The expert's general litigation experience, including the percentage of work performed for plaintiffs and defendants.
3. The identity of other cases, within a reasonable time period, in which the expert has testified by deposition or at trial.
4. An approximation of the portion of the expert's involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services.
An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents. Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and other provisions pursuant to subdivision (b)(4)(C) of this rule concerning fees and expenses as the court may deem appropriate.
Fla. R. Civ. P. 1.280(b)(4)(A)(iii).