SCHWARTZ, Chief Judge.
On these consolidated appeals by the ex-wife from two adverse post-trial orders in the parties’ dissolution case, we affirm one and reverse the other.
I.
The first dispute concerns the distribution of $30,000 recovered from the forfeited deposit of a potential purchaser who defaulted on an agreement to buy the parties’ marital home subsequent to the dissolution. The trial court awarded the entire $30,000 to the former husband on the theory that the controversy was covered by an agreed provision in the marital settlement agreement and final judgment that the former wife would receive $500,000 from the “proceeds” of the residence, with the former husband retaining the balance subject to the payment of several obligations. Specifically, the agreement provided:
Schedule A
[[Image here]]
Because the former wife indeed received the $500,000 from a later, successful sale of the home, the trial court reasoned that she was entitled to no more. We do not disagree.
On the record below, the term “house proceeds” is, at the very best of it for the ex-wife, ambiguous as to whether it includes the sums received by the owners as a result of a failed attempt to sell their home. See Bank of Silvis v. Boultinghouse Auction Co., 71 Ill.App.3d 98, 100, 27 Ill.Dec. 455, 389 N.E.2d 267, 268 (1979)(‘While the term proceeds is one of general understanding, its use in contracts has spawned a considerable number of decisions attributing varying meanings and usages to the word. (See Furst & Thomas v. Elliott, 56 Idaho 491, 56 P.2d 1064. See also Lightcap v. Mobil Oil Corp., 221 Kan. 448, 562 P.2d 1, and Long-Bell Lumber Co. v. National Bank of Commerce, 35 Wash.2d 522, 214 P.2d 183.) The term is one of equivocal import and great generality and its construction depends upon the context and the subject matter to which it is applied.”). If that is the case, the issue of interpretation was for resolution by the trial judge as the finder of fact. See City of Miami Beach v. Sussman, 376 So.2d 1218 (Fla. 3d DCA 1979); Elmore v. Enterprise Devs., Inc., 418 So.2d 1078 (Fla. 4th DCA 1982); see also Rossi v. Brown, 581 So.2d 615 (Fla. 5th DCA 1991). We are not empowered to interfere with the *40 result of that process. Elmore, 418 So.2d at 1079 (“Given the existence of an ambiguity and of evidence to support the trial court’s interpretation, we are simply not authorized to retry the issue.”).
On the other hand, there is ample authority, with which we are inclined to agree, that “house proceeds”[1] includes a forfeited deposit as a matter of law. As the court held in Old Stone Bank v. Tycon I Building, Ltd., 946 F.2d 271, 271-72 (4th Cir.1991):
The broad wording of the deed of trust covering the real estate granted appellant Old Stone Bank a security interest in the property itself and in revenue derived from use of the property. The earnest money deposit was paid in exchange for rights in the property and flowed from a disposition of the property. The deposit therefore represents proceeds of the real estate subject to Old Stone’s lien. In re: Aldersgate Found., Inc., 878 F.2d 1326 (11th Cir.1989).
See also Bank of Silvis, 71 Ill.App.3d at 98, 27 Ill.Dec. 455, 389 N.E.2d at 267. We need not choose between these two approaches because either one results in af-firmance.[2]
II.
It is clear, however, that the trial court had no authority to order, at the instance of the former husband, the ex-wife to discontinue using her married name. Smithers v. Smithers, 804 So.2d 489 (Fla. 4th DCA 2001), review denied, 828 So.2d 389 (Fla.2002).[3] Hence, the or *41 der on appeal which so provides is reversed.
Affirmed in part, reversed in part.

. The result may well have been completely to the contrary if, as it seems to have been assumed at oral argument, the agreement and final judgment had instead provided for the appellant’s receipt of $500,000 from the "proceeds of the sale " of the home. See Zimmer v. Chase Federal Sav. & Loan Ass’n, 120 So.2d 653, 655 (Fla. 3d DCA 1960)(“[P]roceeds is synonymous with product, income, yield, receipts, returns, and, as used in relation to an execution sale, means all that was received from the sale."[e.s.]), cert. denied, 125 So.2d 874 (Fla.1960).
It should be noted that the trial judge, contrary to both counsel, got the issue exactly right below, stating at the conclusion of the hearing:
THE COURT:
[[Image here]]
Okay. Let me read this.
I don’t find this to be a dispute related to the sale of the house. This is a dispute relating to the proceeds of the marital home. She got her 500,000. I find he’s entitled to everything else.

. The appellant's claim that the trial court lacked subject matter — more accurately, "case” — jurisdiction over the deposit dispute, see and compare Davis v. Dieujuste, 496 So.2d 806 (Fla.1986); Garcia-Roque v. Roque-Velasco, 855 So.2d 668 (Fla. 3d DCA 2003); Steinfeld v. Steinfeld, 553 So.2d 774 (Fla. 4th DCA 1989); Brandt v. Brandt, 525 So.2d 1017 (Fla. 4th DCA 1988), falls with our determination that the sum is included within the terms of the agreement and judgment and was therefore subject to the usual reservation of jurisdiction in the final judgment to enforce its terms. Paulucci v. General Dynamics Corp., 842 So.2d 797 (Fla.2003)(Of course, a contrary ruling on the merits would have resulted in a concomitant determination that there was no jurisdiction because the issue was a post-judgment one not covered by the judgment and agreement. See and compare Davis, 496 So.2d at 806; Steinfeld, 553 So.2d at 774; Brandt, 525 So.2d at 1017. See generally Tobkin v. State, 777 So.2d 1160 (Fla. 4th DCA 2001). Thus, this is one of those instances in which the resolution of a particular legal or factual issue also determines the trial court's jurisdiction over the case. Roberts v. Seaboard Surety Co., 158 Fla. 686, 29 So.2d 743 (1947); Florida Power & Light Co. v. Canal Authority, 423 So.2d 421 (Fla. 5th DCA 1982), pet. for review denied, 434 So.2d 887 (Fla.1983).)

.Although the trial court thought otherwise, we cannot see that the fact that the final judgment, at her request, "restored” the ex-wife's maiden name makes any difference to the power, or lack of it, to require that she cease using her married one. Smithers, 804 So.2d at 489.