# Third District Court of Appeal

## State of Florida

Opinion filed June 23, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1811
Lower Tribunal No. 19-32364
_____

**Juan Hidalgo and Elizabeth Hidalgo,**
Petitioners,

vs.

**Citizens Property Insurance Corporation,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Pedro P. Echarte, Jr., Judge.

Chad Barr Law, and Chad A. Barr (Altamonte Springs), for petitioners.

Methe & Rothell, P.A., and Kristi Bergemann Rothell (West Palm Beach), for respondent.

Before MILLER, GORDO and BOKOR, JJ.

PER CURIAM.

The Hidalgos petition this court for certiorari relief from the trial court's order compelling discovery from the Hidalgos' retained expert witness. Specifically, the Hidalgos claim that the trial court exceeded its authority in contravention of clearly established law by ordering that the expert engineer produce financial and business record discovery. The discovery sought includes a list of cases with, and money received over the past three years from, the law firm representing the Hidalgos or any attorney associated with that firm. We have jurisdiction.[1]

An appellate court appropriately grants certiorari relief only where the order on review (1) departs from the essential requirements of the law, and (2) results in material injury for the remainder of the case, (3) that cannot be corrected on postjudgment appeal. Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011). A trial court departs from the "essential requirements of the law" only when "there has been a violation of clearly established law resulting in a miscarriage of justice." Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 527 (Fla. 1995). The issue here turns on whether the trial court's order

---

[1] See Hett v. Barron-Lunde, 290 So. 3d 565, 569 (Fla. 2d DCA 2020) ("An order compelling the production of documents by a nonparty is reviewable by certiorari because he or she has no adequate remedy by appeal.").

requiring the production of certain business records and financial information from the Hidalgos' expert witness violates clearly established law.

The Hidalgos contend that Worley[2] and Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii) clearly establish a bar to the expert discovery sought by Citizens. We first examine what parameters Worley "clearly established." On one hand, discovery directed to a party's relationship with an expert witness is fair game. See Worley v. Cent. Fla. Young Men's Christian Ass'n, 228 So. 3d 18, 22-23 (Fla. 2017) (citing Allstate Ins. Co. v. Boecher, 733 So. 2d 993, 994 (Fla. 1999)). On the other hand, discovery that implicates attorney-client privilege is not. As this court has previously explained, "[t]he Worley court held the attorney-client privilege precludes defense counsel from asking a plaintiff whether his or her attorney referred the plaintiff to a particular doctor for treatment." Araujo v. Winn-Dixie Stores, Inc., 290 So. 3d 936, 939 (Fla. 3d DCA 2019).

The Hidalgos argue that the expert discovery sought fits within the impermissible attorney-client category set forth in Worley. We disagree. "Worley holds only that the attorney-client privilege bars compelled disclosure of whether the plaintiff's lawyer referred the plaintiff to a treating

---

[2] Worley v. Cent. Fla. Young Men's Christian Ass'n, 228 So. 3d 18 (Fla. 2017).

physician." <u>Angeles-Delgado v. Benitez</u>, 300 So. 3d 263, 264 (Fla. 3d DCA 2019) (citing <u>Worley</u>, 228 So. 3d at 20).[3] <u>Worley</u> therefore provides no basis for certiorari relief here.

We next examine Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii)(4), which provides that:

> An expert may be required to produce financial and business records only under the most unusual or compelling circumstances and may not be compelled to compile or produce nonexistent documents. Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and other provisions pursuant to subdivision (b)(5)(C) of this rule concerning fees and expenses as the court may deem appropriate.

---

[3] Most district courts of appeal observed that <u>Worley</u> "resulted in disparate and possibly unfair treatment of plaintiffs and defendants." <u>Dodgen v. Grijalva</u>, 281 So. 3d 490, 492 (Fla. 4th DCA 2019), <u>review granted</u>, No. SC19-1118 (Fla. Oct. 1, 2019); <u>see also Younkin v. Blackwelder</u>, 44 Fla. L. Weekly D549 (Fla. 5th DCA Feb. 22, 2019), <u>review granted</u>, No. SC19-385 (Fla. May 21, 2019); <u>Bupivi v. Pollard</u>, 46 Fla. L. Weekly D324, 2021 WL 484292 (Fla. 2d DCA Feb. 10, 2021); <u>Tahan v. Munoz</u>, No. 3D20-497, 2020 WL 3261128 at *1 (Fla. 3d DCA Jun. 17, 2020) (Miller, J., concurring); <u>Villalobos v. Martinez</u>, 44 Fla. L. Weekly D2458, 2019 WL 4849324 (Fla. 3d DCA Oct. 2, 2019). The Hidalgos piggyback off this perceived (or real) disparate treatment and invite us to expand <u>Worley</u> into situations where no Florida appellate court has gone before. We respectfully decline the Hidalgos' invitation for at least two reasons. First, such an expansion would conflict with this court's previous opinions explaining <u>Worley's</u> limited applicability. Second, the Hidalgos' reading of <u>Worley</u>, even if we endorsed it, would be a new and novel application not "clearly established" at the time of the trial court's order.

Citizens explained to the trial court that it sought the discovery at issue to explore possible bias or prejudice based on the expert's financial and business relation with the Hidalgos' lawyer. The rule contemplates discovery pertaining to possible bias or prejudice of an expert witness. See, e.g., Fla. R. Civ. P. 1.280(b)(5)(A)(iii) (permitting, *inter alia*, discovery of an expert regarding (1) compensation; (2) percentage of work performed for plaintiffs and defendants; (3) identity of other cases within a reasonable time in which the expert has testified; and (4) an approximation of the expert's involvement as an expert witness, based on time spent, percentage of time, or percentage of income earned as an expert witness).

However, additional discovery to explore the potential bias of an expert witness requires a showing of "the most unusual or compelling circumstances." Id. The record on review demonstrates no such circumstances and, consequently, the order on review contains no such findings. Accordingly, we grant the petition in part and quash the order under review to the extent it compels production of documents not enumerated in Rule 1.280(b)(5)(A).

MILLER, J., (specially concurring).

In light of our precedent, I am constrained to align myself with the majority view that requiring the expert to produce a document demonstrating the cumulative amount of money received from the plaintiff's law firm within a finite time period runs afoul "of a clearly established principle of law resulting in a miscarriage of justice." Allstate Ins. Co. v. Hodges, 855 So. 2d 636, 639-40 (Fla. 2d DCA 2003) (citation omitted). Nonetheless, echoing the concerns raised by Justice Polston in his dissent in Worley, I write separately to emphasize that shielding the disclosure of this highly probative discovery perpetuates the "charades in trials," of which the Florida Supreme Court presciently warned in Boecher. 733 So. 2d at 998 (citation omitted).

As the trial court aptly recognized, from time immemorial, the remuneration of testifying experts has been a proper subject of inquiry. Indeed, "[t]he common law at one time disqualified from testifying all parties and others with any pecuniary or proprietary interest in the outcome of a suit." 27 Charles Alan Wright, et al., Federal Practice and Procedure § 6005 (2d ed. 2007). Exclusion of such testimony was supported by "[t]he theory . . . that [the] witnesses were inclined by self-interest toward perjury." Id. Disqualification, however, soon fell out of favor, and attacks on witness credibility became the normative course of action. Id.

Nevertheless, the use of paid expert witnesses continued to yield some degree of cynicism.  In 1858, the United States Supreme Court observed that "opposite opinions of persons professing to be experts may be obtained to any amount."  <u>Winans v. New York & Erie R.R. Co.</u>, 62 U.S. 88, 101 (1858).  Nearly a decade later, Judge John P. Taylor similarly opined,

> Perhaps the testimony which least deserves credit with a jury is that of skilled witnesses.  These gentlemen are usually required to speak, not to facts, but to opinions; and when this is the case, it is often quite surprising to see with what facility, and to what an extent, their views can be made to correspond with the wishes or the interests of the parties who call them.

John P. Taylor, <u>A Treatise on the Law of Evidence as Administered in England and Ireland</u> § 50 at 72 (4th ed. 1864).  And, by the turn of the twentieth century, Judge Learned Hand bluntly described the expert as "a hired champion of one side."  Learned Hand, <u>Historical and Practical Considerations Regarding Expert Testimony</u>, 15 Harv. L. Rev. 40, 53 (1901).

Many contemporary judges and scholars continue to espouse these views, including Wigmore, who noted the "distrust of the expert witness, as one whose testimony is shaped by his bias for the party calling him."  2 John H. Wigmore, <u>Evidence in Trials at Common Law</u> § 563 at 761 (1979).

Despite these sentiments, it is indisputable that expert testimony remains both powerful and compelling.  Consequently, modern trials routinely devolve into so-called "battles of the experts," and serving as an

expert witness has "become more lucrative than the usual day job for many professionals." Kendall Coffey, Inherent Judicial Authority and the Expert Disqualification Doctrine, 56 Fla. L. Rev. 195, 196 (2004); see Rossi v. Brown, 581 So. 2d 615, 617 (Fla. 5th DCA 1991) ("[A] 'battle of the experts' has become the norm in modern trials. Courts [or a jury] must resolve the issues upon which the experts differ."); Neil D. Kodsi, Confronting Experts Whose Opinions Are Neither Supported Nor Directly Contradicted by Scientific Literature, 80-JUN Fla. B.J. 80, 80 (2006) ("In complex litigation, cases are often won or lost based on who wins the 'battle of the experts.'"). Thus, the exposure of potential financial bias is a vital tool for undermining expert credibility.

Financial bias cannot be measured by viewing a single instance of compensation in isolation. Rather, evidence of a longstanding, lucrative relationship, from which an expectation of future referrals and an attendant revenue stream flows serves as a far better barometer. As was articulated by the Florida Supreme Court over two decades ago in Boecher,

> A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive to continue the financially advantageous relationship.

8

Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process. . . . To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert. This limitation thus has the potential for undermining the truth-seeking function and fairness of the trial.

733 So. 2d at 997-98 (citation omitted).

In the instant case, the discovery sought to ascertain the cumulative amount of compensation the law firm paid the expert over a three-year period. As established by the preceding principles, this sum was indubitably relevant to demonstrate financial bias. The fact that the request was directed at payments between law firm and expert, rather than party and expert, is a difference without a distinction. Any firm is "a repeat player in the judicial system," thus, the experts "it uses on a regular basis may have a financial incentive that a jury is entitled to know about and evaluate for potential bias." Worley, 228 So. 3d at 30 (Polston, J., dissenting) (citation omitted).

As the majority correctly holds, however, the methodology employed by the insurer in this case was procedurally improper under Elkins v. Syken, 672 So. 2d 517 (Fla. 1996), Florida Rule of Civil Procedure 1.280(b)(5), and other applicable authority. This confluence of rule and precedent constructs a virtually impenetrable barrier against "financial connection" and

9

"cumulative amount" discovery from experts retained by the plaintiff. See Elkins, 672 So. 2d at 520 (affirming this court's determination that "the [expert] should not be required to disclose the amount of money earned from expert witness work or to disclose his or her total income"); Worley, 228 So. 3d at 23 ("[T]he relationship between a law firm and a plaintiff's treating physician is not analogous to the relationship between a party and its retained expert" and is therefore not discoverable.); Fla R. Civ. P. 1.280(b)(5)(A) ("An expert may be required to produce financial and business records only under the most unusual or compelling circumstances."). Yet, at the same time, Boecher expressly authorizes a plaintiff to demand the identical discovery from a party insurer. 733 So. 2d at 997.

This disparity in result inexorably places the insurer on unequal footing with the plaintiff without conferring any corresponding benefit. This should raise concern in the minds of those committed to the adage "sauce for the goose is sauce for the gander," Sharp v. State, 221 So. 2d 217, 219 (Fla. 1st DCA 1969), as any unsound disadvantage in litigation threatens the integrity of the truth-seeking process.