QUINCE, J.
We have for review the decision of the Fifth District Court of Appeal in Worley v. Central Florida Young Men’s Christian Ass’n, Inc., 163 So.3d 1240 (Fla. 5th DCA 2015), in which the district court certified conflict with Burt v. Government Employees Ins. Co., 603 So.2d 125 (Fla. 2d DCA 1992), regarding whether the attorney-client privilege protects a party from being required to disclose that his or her attorney referred the party to a physician for treatment. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we conclude that the question implicates a confidential communication between the attorney and the client and is therefore protected. Accordingly, we quash the decision of the Fifth District and approve the decision of the Second District Court of Appeal.
FACTS
In its opinion granting certiorari review of the trial court’s order on discovery, the Fifth District set forth the relevant facts:
After Worley fell in YMCA’s parking lot, she twice went to the emergency room of Florida Hospital East, where she was eventually advised to see a specialist concerning pain in her right knee. However, according to Worley, she did not go to a specialist for a month or two after the accident because she did not have enough money or any health insurance. Instead, she “started seeking out representation.” After Worley retained Morgan & Morgan, various doctors from Sea Spine Orthopedic Institute, Underwood Surgery Center,' and Sanctuary Surgical & Anesthesia treated Worley. Morgan & Morgan subsequently filed a negligence suit against YMCA on behalf of Worley, seeking to recover damages, including the costs of her treatment from those healthcare providers.
Worley, 163 So.3d at 1242. During discovery of this “relatively routine trip-and-fall case,” Central Florida Young Men’s Christian Association, Inc. (YMCA), repeatedly attempted to discover the relationship between Worley’s law firm, Morgan & Morgan, and her treating physicians. Id.
At Worley’s initial deposition, YMCA asked if she was referred to her specialists by her attorneys, to which Worley’s counsel objected on the ground of attorney-client privilege. Id. YMCA then propounded to Worley three sets of Boecher[1] interrogatories, directed to specific doctors employed by Sea Spine, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia, and a supplemental request to produce, directed to Morgan & Morgan, in an effort to establish the existence of a referral relationship between Worley’s attorneys and her treating physicians. 163 So.3d at 1242-43. These efforts were based on YMCA’s suspicions that there was a “cozy agreement” between Morgan & Mor *21 gan and the physicians, due to the amounts of Worley’s medical bills. Id. at 1243.
In response to YMCA’s interrogatories and supplemental request to producé, Worley argued that the requests were “overbroad, vague, unduly and financially burdensome, irrelevant and in violation [of] allowable discovery pursuant to Florida Rule of Civil Procedure 1.280(b)(4).” Id. Worley also contended that Morgan & Morgan does not maintain “information for treating physicians as in this matter, or otherwise.” Id. Despite this, at a hearing concerning Worley’s objections, the trial court only sustained Worley’s objection to the question regarding whether she was referred to the doctors by her attorneys and “did not address Worley’s objections to YMCA’s other outstanding discovery requests at that time.” Id. at 1244.
At a second deposition, YMCA again asked Worley how she was referred to her doctor, and again Worley’s attorney objected on the ground of attorney-client privilege. Id. Following the deposition; YMCA filed a “Motion to Compel Better Answers to Boecher Interrogatories and Supplemental Request for Production.” Id This prompted a second hearing before the trial court, where Worley was required to produce, within 30 days, two types of discovery materials for the time period between three years prior to and six months after December 4, 2012:
[1] complete copies of any and all documents reflecting formal or informal agreements, arrangements, and understandings regarding the billing for patients or any direct or indirect referral of a client by any attorney employed by or affiliated with Morgan <& Morgan (whether currently or 'formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice versa [; and]
[2] the names of any and all cases (including plaintiff, defendant, ‘court and case number) where a client was referred directly or indirectly by any attorney employed by or affiliated with Morgan & Morgan (whether currently or formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice ver-sa.
Id. Additionally, the trial court ordered that “[i]f the health care provider doesn’t have it, then the law firm is to produce it,” but did not specify which party had to incur the costs of complying with the order. Id.
In its motion for reconsideration of the trial court’s order, Worley argued that the information was protected by attorney-client privilege and that compliance with the order “would be overly burdensome, if not impossible.” Id. at-1245. In support of the latter argument, Worley provided two affidavits. Id. The first, by Deborah Par-rott, the Chief Financial Officer (CFO) of Morgan & Morgan, stated that there were no documents “kept or maintained by Morgan & Morgan that address the information sought by YMCA.” Id. The second, by Worley’s attorney, stated that production of the requested materials would require over 200 hours of attorney review time “to manually search hard-copy files” at an estimated cost of $94,0Í0. Id. The trial court summarily denied the motion. Id.
Worley then filed a petition for writ of certiorari with the Fifth District. Id. Wor- *22 ley’s main claim-was that the trial court order requires the production of informs tion protected by the attorney-client privilege.[2] Id. In denying Worley’s claim, the district court held “that it was appropriate for YMCA to ask Worley if she was referred to the relevant treating physicians by her counsel or. her . counsel’s firm.” Id. at 1247-48. It also found no error regarding the triab court’s order for Worley to comply with YMCA’s supplemental request to produce. Id. at 1249. Accordingly, the Fifth District denied Worley’s certiora-ri petition and certified conflict with Burt “to the extent that it holds that the disclosure of a referral of a client by an attorney to a healthcare provider is always protected by the attorney-client privilege.” Id. at 1250.
ANALYSIS
The issue before this Court is whether the attorney-client privilege protects a plaintiff from disclosing that an attorney referred him or her to a doctor for treatment, or a law firm from producing documents related to a possible referral relationship between the firm and its client’s treating physicians. However, resolution of this issue will require us to first Consider another issue: whether the financial relationship between a plaintiffs law firm and the plaintiffs treating physician is discoverable. In its-decision approving the order, the Fifth District relied on district court decisions that have held that the financial relationship between a law firm and a plaintiffs treating physician is discoverable, pursuant to our decision in Boecher, if evidence of a referral relationship can be shown. See Worley, 163 So.3d at 1246 (citing Brown v. Mittelman, 152 So.3d 602 (Fla. 4th DCA 2014), and Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co., 103 So.3d 200 (Fla. 4th DCA 2012)).
We disagree that Boecher is applicable and, accordingly, disagree with the reasoning of these decisions. In Boecher, we corn sidered whether a party could obtain discovery from the opposing party regarding the extent of that party’s relationship with an expert. Boecher, 733 So.2d at 994. In that case, the insured. sought to discover from the insurance company the extent of its financial relationship with the- expert witness that the insurance company intended to call at trial to dispute causation, Id. In concluding that the discovery was permissible, we recognized our earlier decision in Elkins v. Syken, 672 So.2d 517 (Fla. 1996). There, experts retained to provide compulsory -medical examinations were ordered to produce expansive discovery of their private financial information, including tax returns. Id. at 520. We found such invasive and harassing discovery to be impermissible because it threatened to chill the willingness of experts to become involved in litigation. Id. at 522. In response to this concern, we adopted Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii)[3] *23 in order “to avoid annoyance, embarrassment, and undue expense” to experts. Boecher, 733 So.2d at 998 (quoting Fla. R. Civ. P. 1.280 committee notes (1996)). However, because the discovery sought in Boeeher was “directed to a party about the extent of that party’s relationship with a particular expert,” we found that the balance of interests shifted -in favor of allowing the discovery. Id. at 997.
Since then, district courts have extended Boeeher to allow discovery'of the financial relationship between law firms and treating physicians. See Worley, 163 So.3d at 1246 (“In Florida, it is well established that the financial relationship between the law firm and the treating physician is not privileged and is relevant to show bias.”); Brown, 152 So.3d at 604 (“The financial relationship between the treating doctor -and the plaintiffs attorneys in present and past cases-creates the potential for bias and discovery of such a relationship is permissible.”); Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay, 133 So.3d 1178 (Fla. 4th DCA 2014) (“A law firm’s financial relationship with a doctor is discoverable on the issue of bias.”); Steinger, 103 So.3d at 205 (“[T]he defendant is entitled to discover information regarding the extent of the relationship between the law firm and the doctor.”). However, contrary to these decisions, we find that the relationship between a law firm and a plaintiffs treating physician is not analogous to the relationship between a party and its retained expert.
First; and most obviously, the law firm is not a party to the litigation. In Boeeher, the insured sought discovery from the other'party, in that ease Allstate Insurance, regarding the financial relationship Allstate had with its hired expert. Boecher, 733 So.2d at 994. In the instant case, YMCA is seeking discovery of the relationship between Morgan & Morgan, a non-party, and Worley’s treating physicians. Furthermore, Boeeher deált with the discovery of éxperts who had- been hired for the purposes of litigation. Treating physicians, however, “[do] not acqüire [their] expert knowledgé for the purpose of litigation, but rather simply--in the course of attempting to make [their] patientfs] well.” Frantz v. Golebiewski, 407 So.2d 283, 285 (Fla. 3d DCA 1981). Moreover, they “typically testify] ,'.. concerning [their] ... own medical performance on a particular occasion and [do] not opin[e] about the performance of another.” Fittipaldi USA, Inc. v. Castroneves, 905 So.2d 182, 186 (Fla. 3d DCA 2005).
We recognize that the evidence code allows a party to attack a.witness’s credibility based on bias. § 90.608(2), Fla. Stat. (2015). We also agree that “a treating physician,, like any other witness, is subject to impeachment based on bias.” Steinger, 103 So.3d at 203. However, bias on the part of the treating physician can be established by providing evidence of a letter of protection (LOP),[4] which may demonstrate that the physician -has an interest in the outcome of the litigation. In the instant *24 case, Worley was treated by all of her specialists pursuant to letters of protection. Bias may also be established by providing evidence that the physician’s practice was based entirely on patients treated pursuant to LOPs, as was found in the instant case. Specifically, a Sea Spine employee testified during depositions that at the time of Worley’s treatment, its entire practice was based on patients treated pursuant to LOPs. Additionally, medical bills that are higher than normal can be presented to dispute the physician’s testimony regarding the necessity of treatment and the appropriate amount of damages.
Allowing further discovery into a possible relationship between the physician and the plaintiffs law firm would only serve to uncover evidence that, even if relevant, would require the production of communications and materials that are protected by attorney-client privilege. As mentioned previously, courts that have allowed this type of discovery have first required evidence of a referral relationship between the law firm and the treating physician. See Brown, 152 So.3d at 605 (“In cases where there is evidence of a referral relationship, more extensive financial discovery may be appropriate from both the law firm and the doctor.”); see also Steinger, 103 So.3d at 206 (“Once there is evidence that a referral relationship exists, discovery from the law firm may be appropriate .... ”). In the instant case, the Fifth District stated that in order to establish that a referral has occurred, discovery should first be sought from the party, the treating physician, or other witnesses. Worley, 163 So.3d at 1247. Finding that YMCA had “exhausted all other avenues without success,” the court held that it was appropriate to ask Worley if she had been referred to her doctor for treatment. Id. at 1248.
Which brings us to the conflict issue before this Court: whether the attorney-client privilege precludes defense counsel from asking a plaintiff whether his or her attorney referred the plaintiff to a physician for treatment. In the conflict case, the Second District held that the question, “[D]id counsel refer [the plaintiff] to a particular physician[?]” sought “discovery of confidential communications constituting her attorney’s advice regarding this lawsuit.” Burt, 603 So.2d at 125. In support of its conclusion, the district court reasoned, “The question does not elicit the underlying fact of whether she saw a particular physician, but rather elicits whether she saw the physician at her attorney’s request.” Id. at 125-26. In the instant case, the Fifth District held that the Second District’s decision had been “called into doubt by the subsequent case law approving discovery pertaining to the financial relationship between a plaintiffs treating physician and his or her lawyer(s).” Worley, 163 So.3d at 1247. It appears that the district court supported its conclusion by reasoning that because YMCA could not obtain the information any other way, it could ask Worley directly.
We do not agree with the Fifth District’s attempt to circumvent the attorney-client privilege out of perceived necessity. The attorney-client privilege is the oldest confidential communication privilege known in the common law. See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). It is governed by the Florida Evidence Code, codified at section 90.502, Florida Statutes (2015). Under the Florida Evidence Code,
A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
*25 § 90.502(2), Fla. Stat. The Code further provides:
A communication between lawyer and client is “confidential” if it is not intended to be disclosed to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
2. Those reasonably necessary for the transmission of the communication.
§ 90.502(1)(c), Fla. Stat. While section 90.502(4) provides several exceptions[5] to the attorney-client privilege, none of them apply to the instant case. The purpose of the attorney-client privilege is to “encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.” Am. Tobacco Co. v. State, 697 So.2d 1249, 1252 (Fla. 4th DCA 1997) (quoting Haines v. Liggett Group, Inc., 975 F.2d 81, 90 (3d Cir. 1992)). It is an interest traditionally deemed worthy of maximum legal protection. Id. Furthermore, it is not concerned with the litigation needs of the other party. See Quarles & Brady, LLP v. Birdsall, 802 So.2d 1205, 1206 (Fla. 2d DCA 2002) (“[UJndue hardship is not an exception, nor is disclosure permitted because the opposing party claims that the privileged information is necessary to prove their case”) (citation omitted)). Therefore, we find that the question of whether a plaintiffs attorney referred him or her to a doctor for treatment is protected by the attorney-client privilege.
Respondent argues that the lawyer’s act of referring a client to a treating physician is an underlying fact, not a communication. We disagree. That the plaintiff was treated by a particular doctor is an underlying fact. That the plaintiff received a referral to see a particular doctor is also an underlying fact. However, whether the plaintiffs attorney requested that the client see a certain doctor requires the plaintiff to disclose a part of a communication that was held between the plaintiff and attorney, and we resist any attempts to separate the contents of communications to distinguish “facts” from privileged information. To hold otherwise would severely undermine the purpose of the privilege, which is to encourage the free flow of information between attorneys and their clients. Accordingly, we find that the supplemental request to produce requires the production of privileged materials.
We also find that the supplemental request to produce is unduly burdensome. With its motion for reconsideration, Worley filed two affidavits with the trial court. Worley, 163 So.3d at 1245. The affidavits stated that compliance with the *26 order would require over 200 hours of attorney review at a-cost of $94,010. Id In Boecher, we explained that “certiorari is the appropriate remedy when a discovery order ‘departs from the essential requirements of law and thus causes material injury to the petitioner throughout the remainder, of the proceedings, effectively leaving no adequate remedy on appeal.’ ” Boecher, 733 So.2d at 999 (quoting Allstate Ins. Co. v. Langston, 655 So.2d 91, 95 (Fla. 1995)). In determining whether the ordered discovery would constitute an undue burden, courts look to the facts of each case. See Schering Corp. v. Thornton, 280 So.2d 493, 494 (Fla. 4th DCA 1973) (“We do not here attempt to delineate the point at which the burden becomes unreasonable, and indeed, it must necessarily be a case by case decision under the applicable circumstances.’’). Here, we find that 200 hours and over $90,000 in costs to discover the collateral issue of bias in a case where the damages sought total $66,000 is unduly burdensome.
Even in cases where a plaintiffs medical bilis appear to be inflated for the purposes of litigation, we do not believe that engaging in costly and time-consuming discovery to uncover a- “cozy agreement” between the law firm and a treating physician is the appropriate response. We are concerned that this type of discovery would have a chilling effect on doctors who may refuse to treat patients who could end up in litigation out of fear of becoming embroiled in the litigation themselves. Moreover, we worry that discovery orders such as the one in this case will inflate the costs of litigation to the point that some plaintiffs will be denied access to the courts, as attorneys will no longer be willing to advance these types of costs. Finally, attempting to discover this information requires the disclosure of' materials that would otherwise be protected under the attorney-client privilege.
CONCLUSION
Therefore, we quash the decision of the Fifth District Court and approve the decision of the Second District.
It is so ordered.
.LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY and LAWSON, JJ., concur,

. Allstate Ins. Co. v. Boecher, 733 So.2d 993 (Fla. 1999).

. Additionally, Worley argued that the trial court order (1) requires Worley to produce documents that do not exist; (2) requires Morgan & Morgan, a nonparty, to produce the information; (3) requires Worley or Morgan & Morgan to engage in an unduly and financially burdensome production; (4) requires Morgan & Morgan to incur all the costs associated with the production of the ordered discovery; and (5) expands the scope of bias-related discovery that is otherwise permitted. Id, at 1245.

. Essentially, the rule provides that a party may only obtain discovery of (1) the scope of an expert's employment in the pending case and compensation for such service, (2) the , expert's general litigation experience, (3) other cases, within a reasonable time period, in which the expert has testified, and (4) an approximate percentage of time that the expert serves as an expert witness. Financial and business records may only be requested under "the most unusual or cbmpelling cir *23 cumstances.” Fla. R. Civ. P. 1.280(b)(5)(A)(iii).

. “A letter of protection is a document sent by an attorney on a client’s behdlf to a' healthcare provider when the -client needs medical treatment, but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider's bill from the procee.ds of [a] settlement or award; and typically, if the client does not obtain-a favorable recovery,-the client is still liable to pay- the provider’s -bills.'” Caroline C. Pace, Tort Recovery for Medicare Beneficiaries; Procedures, Pitfalls and Potential Values, 49 Hous. Law. 24, 27 (2012).

. This subsection provides:
(4) There is no lawyer-client privilege under this section when:
(a) The services of the lawyer were sought or obtained to enable or aid anyone to commit what the client knew was crime or fraud.
(b) A communication is relevant to an issue between parties who claim through the same deceased client.
(c) A communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship.
(d) A communication is relevant to an issue concerning the intention or competence of a client executing an attested document to which the lawyer is an attesting witness, or concerning the execution or attestation of the document.
(e) A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.
§ 90.502(4), Fla. Stat. (2015).