IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Petitioner,

 v.                                                                            Case No.  5D17-447

DAVID C. KNAPP AND LOGAN ATKINSON,

      Respondents.

_____/

Opinion filed January 12, 2018

Petition for Certiorari Review
of Order from the Circuit Court
for Brevard County, Charles
J. Roberts, Judge.

Rhonda B. Boggess, and Gina P. Grimsley,
of Taylor, Day, Grimm & Boyd, Jacksonville,
for Petitioner.

Christopher V. Carlye, of The Carlyle
Appellate Law Firm, The Villages, for
Respondent, David C. Knapp.

No appearance for other Respondent.


EDWARDS, J.

     State Farm Mutual Automobile Insurance Company petitions this Court to issue a

writ of certiorari regarding discovery orders compelling production of documents that

State Farm claims the work product doctrine and the attorney-client privilege protect from

disclosure. Although the trial court reviewed the documents *in camera*, its orders did not state which documents State Farm properly designated as work product nor which documents contained privileged attorney-client communications. Furthermore, the trial court's orders failed to explain the justification for requiring State Farm to turn over its work product documents to Respondent David C. Knapp, and there is no justification here for ordering production of confidential attorney-client documents to opposing counsel. Under the circumstances, the trial court departed from the essential requirements of the law, subjecting State Farm to harm that cannot be remedied in a later plenary appeal. Accordingly, we grant the petition and quash the orders in question.

## FACTUAL BACKGROUND

Respondent was involved in two automobile wrecks within six months. Respondent obtained medical treatment following these wrecks, and he sued both of the adverse drivers. He also sued his insurer, State Farm, for payment of uninsured/underinsured motorist benefits and bad faith. State Farm retained and identified Dr. Michael Zeide as an expert witness to address Respondent's alleged injuries and the medical care and treatment related to those injuries.

In turn, Respondent served discovery seeking information about how often State Farm had retained Dr. Zeide as an expert and how much money it had paid him, directly or indirectly, during the preceding three years. Our supreme court authorized this type of discovery, within certain limits, in the case of *Allstate Insurance Co. v. Boecher*, 733 So. 2d 993 (Fla. 1999). Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii) codifies this so-called *Boecher* discovery. *Boecher* discovery allows a party to gather information that can be used to provide a factual basis for proving and arguing to the jury that an expert

2

witness, such as Dr. Zeide, may have a financial bias favoring the party retaining the expert, here State Farm. *See Boecher*, 733 So. 2d at 997-98.[1]

Initially, State Farm objected to portions of Respondent's *Boecher* discovery and stated that it did not maintain any database or index in the ordinary course of business that could be accessed to identify the amounts it paid to Dr. Zeide when he was engaged to perform analysis, provide testimony, and/or complete compulsory medical examinations. However, State Farm did serve unverified answers to Respondent's interrogatories, providing other information, such as the testimonial percentage and percentage of engagement of its experts, including Dr. Zeide, by plaintiffs versus defendants.

Respondent filed a motion to compel better responses, which the trial court granted. The trial court required State Farm to disclose the amount Dr. Zeide billed to State Farm, the amount State Farm paid him, and the total amount of money that State Farm or anyone acting on behalf of any State Farm entity had paid to each listed expert witness, directly or indirectly, during the preceding three years (2013-2015) for all services rendered, excluding payments or charges for medical treatment provided.

In response to the court's order, State Farm provided verified answers to interrogatories, stating that it conducted a manual review of its records. State Farm also gave information regarding Dr. Zeide, including the number of claims and amount of money paid for compulsory medical examinations or record reviews for the years in

---

[1] *But see Worley v. Cent. Fla. Young Men's Christian Ass'n*, 228 So. 3d 18 (Fla. 2017). *Worley* seems, as a practical matter, to permit full *Boecher* discovery only when it is directed to personal injury defendants and their insurers, while shielding injured plaintiffs from having to disclose information about similar repetitious referral relationships that exist between doctors and plaintiffs' counsel by invoking the attorney-client privilege.

question. According to State Farm, during those three years, Dr. Zeide was retained in 601 claims and received $1,235,067.75 in compensation for providing his services. State Farm advised that, because the numbers were calculated by hand following a manual review of claims files, the information was "its best approximation of the individual payments it made to Dr. Zeide" during the three years covered by Respondent's *Boecher* discovery.

Not satisfied with this additional information, Respondent scheduled the deposition of Bruce Peterson, a State Farm representative who verified the *Boecher* interrogatory answers in this case. Respondent also noticed the deposition of a different State Farm representative, Mike Wallace, who verified State Farm's answers to the *Boecher* interrogatories regarding Dr. Zeide in a case between Amanda Park and State Farm, saying that it was not feasible to provide that information and would cost hundreds of thousands of dollars to compile. Both deposition notices were duces tecum, requiring each named witness to produce all documents relied upon or generated in connection with providing the *Boecher* information; all written policies, manuals, memos, or other documents that set forth State Farm's policies for tracking payments made to retained experts; and all correspondence, e-mails, or other documentation relating to the issue of State Farm's payment to Dr. Zeide during the three years in question. State Farm objected, moved for a protective order, and moved to quash the duces tecum document requests on a number of grounds, including that the information sought was beyond the proper scope of discovery, that it invaded the privacy of non-parties, that it sought documents protected from disclosure by the work product doctrine and attorney-client privilege, and that compliance was unduly burdensome.

Respondent asserted that State Farm's answers to interrogatories regarding its dealing with Dr. Zeide were inconsistent in this case compared to its answers given in the Park case, which Respondent asserted were both different from the answers State Farm gave to similar interrogatories in a third case between Cynthia Parent and State Farm. In the Parent case, State Farm advised that it paid Dr. Zeide or the companies employing him a total of $1,235,077—a difference of $9.25 from the answer given in the present case. Based on the allegedly inconsistent answers, Respondent asserted that State Farm was not giving accurate answers to the interrogatories, which justified taking the depositions of Wallace and Peterson.

At the conclusion of the December 20, 2016 hearing on State Farm's motions, the trial court orally announced its rulings regarding what subject matter could be addressed in each deposition and what documents needed to be provided. The trial court suggested postponing the depositions scheduled for January 6, 2017, so that State Farm could compile the documents, prepare a privilege log, and allow time for the trial court to review privileged information if there was a dispute. Respondent postponed the depositions to January 10, 2017. The trial court also granted Respondent's request to order ExamWorks, a company employing Dr. Zeide, to provide evidence of all payments it made to Dr. Zeide for any State Farm entity for the same three years. ExamWorks filed its response, advising that it did not have any responsive documents that it maintained in the ordinary course of business.

On December 28, 2016, the trial court entered a written order regarding State Farm's objections and motions, which required the documents and privilege logs to be provided to the court and opposing counsel ten days prior to the depositions. This

5

deadline translated to a December 30 due date, two days after the order. State Farm filed its privilege log related to the Wallace notice of deposition on the due date, identifying proprietary information that he had relied on for providing responses in the Park case, together with an affidavit from Wallace explaining his responses. State Farm filed a motion for extension of time on December 30, 2016, seeking five additional business days to prepare and file the privilege log regarding Peterson. On January 5, 2017, State Farm filed its privilege log, with an amended log filed the following day, regarding the documents described in the duces tecum portion of Peterson's deposition notice. The amended privilege log identified documents that State Farm claimed constituted work product and documents that allegedly were or contained privileged attorney-client communications. The amended privilege log identified each document by date, author, recipients, subject matter, and privilege(s) asserted.

At the January 11, 2017, hearing, the trial court announced that it had reviewed the documents attached to the privilege logs and determined what should be redacted. The trial court directed State Farm to pick up the redacted documents from the court on January 12 and provide them to Respondent's counsel on January 13. On January 13, 2017, State Farm filed a motion for extension of time and to stay so that it could have time to determine whether it would seek appellate review of the court's order once it was reduced to a written, executed order.

The court's oral rulings announced on January 11 were set forth in a written order filed January 31, 2017, and an amended order filed February 7, 2017, but dated nunc pro tunc January 13, 2017. The trial court ruled that the documents related to State Farm's internal policies and procedures were proprietary in nature and not reasonably calculated

6

to lead to the discovery of admissible evidence; therefore, State Farm did not need to produce them in discovery. However, the trial court ordered that the information and documents relating to State Farm's use of and payments to Dr. Zeide were reasonably calculated to lead to the discovery of admissible evidence; thus, they were discoverable. The trial court stated that it made redactions "consistent with the reasoning above" to those documents which were ordered to be produced.

These orders required State Farm to provide the redacted documents to Respondent's counsel no later than 5:00 p.m. on January 13, 2017. In an order dated February 10, 2017, the trial court granted State Farm's previously filed motion for stay; however, the stay would expire at 5:00 p.m. on February 14, 2017. Respondent served amended notices of depositions for Wallace and Peterson to take place on February 15, 2017. State Farm then filed its petition with this Court, and we granted State Farm's motion for stay.

## STANDARD OF REVIEW

This Court may grant a petition for certiorari "only when the petitioner establishes (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal." *Capital One, N.A. v. Forbes*, 34 So. 3d 209, 212 (Fla. 2d DCA 2010). This Court first examines prongs two and three to determine its certiorari jurisdiction. *See Holden Cove, Inc. v. 4 Mac Holdings Inc.*, 948 So. 2d 1041, 1041 (Fla. 5th DCA 2007); *Barker v. Barker*, 909 So. 2d 333, 336 (Fla. 2d DCA 2005), *rev. denied*, 914 So. 2d 952 (Fla. 2005). If jurisdictional prongs two and three are not fulfilled, we are bound to dismiss the petition. *See Capital One, N.A.*, 34 So. 3d at 212.

7

Certiorari is the appropriate vehicle to review an interlocutory discovery order requiring the production or disclosure of information for which a privilege is asserted. *See Seminole Cty. v. Wood*, 512 So. 2d 1000, 1001 (Fla. 5th DCA 1987). "The basis for allowing certiorari review of certain discovery orders is that discovery of protected material could result in letting the 'cat out of the bag,' and injury could result if such information was disclosed." *Cape Canaveral Hosp., Inc. v. Leal*, 917 So. 2d 336, 339 (Fla. 5th DCA 2005); *see also State Farm Fla. Ins. Co. v. Marascuillo*, 161 So. 3d 493, 497 (Fla. 5th DCA 2014); *Estate of Stephens ex rel. Clark v. Galen Health Care, Inc.*, 911 So. 2d 277, 279 (Fla. 2d DCA 2005).

### DISCUSSION AND ANALYSIS

When a party asserts privilege objections in opposition to discovery requests, the trial court must make specific findings to support its denial of those objections. Such findings are necessary for meaningful appellate review. This Court specifically addressed this issue in *Magical Cruise Co. v. Turk*, 114 So. 3d 233 (Fla. 5th DCA 2013). In *Turk*, the majority relied on *Dismas Charities, Inc. v. Dabbs*, 795 So. 2d 1038 (Fla. 4th DCA 2001), granted certiorari relief, and quashed an order requiring the petitioner to turn over work product because the trial court made no findings to justify the production. 114 So. 3d at 233; *see also Harborside Healthcare, LLC v. Jacobson*, 222 So. 3d 612, 616 (Fla 2d DCA 2017). We remanded with instructions to the trial court to reconsider the petitioner's work product objections and to support any order requiring production of the documents with appropriate findings. *Turk*, 114 So. 3d at 233.

In the present case, the trial court's orders directing production of the documents are devoid of any determination that the documents at issue were not work product or

8

protected by attorney-client privilege. Instead, the orders merely provide that the documents are reasonably calculated to lead to the discovery of admissible evidence. That finding only addressed the possible relevance of the documents while completely ignoring State Farm's claims that the documents were exempt from discovery as privileged work product or confidential attorney-client communication. Because State Farm filed appropriate objections, motions, and privilege logs asserting that work product and/or attorney-client privilege protected the documents at issue, the trial court was required to make specific detailed findings addressing each privilege claim before ordering production. *See id.*; *Dismas*, 795 So. 2d at 1039. Accordingly, because the trial court failed to address the privilege claims, we grant the petition, quash the trial court's orders, and remand for further proceedings.

During its review on remand, the trial court must determine whether State Farm's work product privilege claims are well-founded. Pursuant to Florida Rule of Civil Procedure 1.280(b)(3), materials prepared in anticipation of litigation by or for a party or its representative are protected from discovery, unless the party seeking discovery has need of the material and is unable to obtain the substantial equivalent without undue hardship. The rationale supporting the work product doctrine is that "one party is not entitled to prepare his case through the investigative work product of his adversary where the same or similar information is available through ordinary investigative techniques and discovery procedures." *Dodson v. Persell*, 390 So. 2d 704, 708 (Fla. 1980). Fact work product traditionally protects that information which relates to the case and is gathered in anticipation of litigation. *See State v. Rabin*, 495 So. 2d 257, 260 (Fla. 3d DCA 1986). Opinion work product consists primarily of the attorney's mental impressions,

9

conclusions, opinions, and theories; it generally remains protected from disclosure, unlike fact work product, which is subject to discovery upon a showing of "need" and "undue hardship." *Id.* The showing of need and undue hardship necessary to overcome work product immunity must include specific explanations and reasons. *See N. Broward Hosp. Dist. v. Button*, 592 So. 2d 367, 368 (Fla. 4th DCA 1992).

The alleged work product documents at issue in this case are internal forms and emails relating to State Farm's responses to *Boecher* interrogatories. Wallace's affidavit provides evidence that the disputed documents were prepared in anticipation of litigation, which provides a good faith claim and the possibility for finding that the work product privilege would attach to them. *See Anchor Nat'l Fin. Servs., Inc. v. Smeltz*, 546 So. 2d 760, 760 (Fla. 2d DCA 1989). If on remand the trial court agrees that State Farm's work product claims are valid, Respondent would be entitled to the "fact" work product contained in the documents only if he can establish need and undue hardship. At this time, there has been no such showing in this case.

It is hard to imagine Respondent's need for the potentially privileged information relating only to *Boecher* discovery. Respondent has already obtained discovery responses that confirm that in the years 2013-2015, State Farm retained Dr. Zeide approximately 600 times and paid him either $1,235,067.75 or $1,235,077, depending on its slightly different answers to interrogatories in this case and the Parent case. Armed with that information at trial, Respondent's counsel can certainly lay a factual basis from which to argue financial bias as permitted by *Boecher* without the need to invade State Farm's work product. By making this observation, we do not intend to foreclose the trial court's consideration of that issue if it is raised and supported on remand.

10

Furthermore, if on remand the trial court determines that certain documents constitute confidential attorney-client communication, they are beyond the reach of discovery. *See Worley v. Cent. Fla. Young Men's Christian Ass'n*, 228 So. 3d 18, 24-25 (Fla. 2017). The attorney-client privilege is governed by section 90.502, Florida Statutes (2016), which provides that a client has a "privilege to refuse to disclose and to prevent any other person from disclosing the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." Furthermore, there are no "relevance" or "need" exceptions to the attorney-client privilege. *See Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011); *see also Quarles & Brady, LLP v. Birdsall*, 802 So. 2d 1205, 1206 (Fla. 2d DCA 2002). The documents for which State Farm asserted attorney-client privilege include emails from State Farm employees that are either directed to or show copies being provided to their attorneys. Thus, because State Farm has established a good faith basis for asserting the attorney-client privilege, the trial court must determine on remand whether that privilege protects each objected-to document from discovery.

Accordingly, we grant the petition, quash the orders denying State Farm's motion for protective order and granting Respondent's motion to compel disclosure of documents that State Farm asserted were protected from discovery by either the work product doctrine or attorney-client privilege, and remand for further proceedings consistent with this order.

PETITION GRANTED, ORDERS QUASHED.

COHEN, C.J., and BERGER, J., concur.