# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**FRANK BELLEZZA,**
Appellant,

v.

**JAMES MENENDEZ** and **CRARY BUCHANAN, P.A.,**
Appellees.

No. 4D17-3277

[May 8, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; William L. Roby, Judge; L.T. Case No. 15-422 CA.

Margaret M. Bichler of Trelles & Bichler, North Palm Beach, for appellant.

Carri S. Leininger of Williams, Leininger & Crosby, P.A., N. Palm Beach, for appellees.

### *On Motion For Rehearing*

MAY, J.

We deny the defendants' motion for rehearing, but withdraw our opinion of March 6, 2019, and substitute the following opinion in its place to correct a factual error.

Protecting attorney-client privilege leads to a reversal of the final judgment in this personal injury case. The plaintiff appeals an adverse final judgment, arguing the trial court erred in two ways: (1) admitting attorney-client privileged evidence; and (2) excluding similar evidence concerning the defendant law firm. We agree on the first issue, rendering the second issue moot, and reverse.

The claim arose from a collision between the defendant law firm's vehicle, driven by one of its employees, and the plaintiff who was walking his bicycle along the street. The plaintiff sued the driver and the law firm ("defendants") for negligence and vicarious liability. During discovery, the defendants requested information regarding the financial relationship

between the plaintiff's attorney and his treating physicians. The plaintiff objected to each request.

The trial court found the request did not seek information protected by the attorney-client privilege.[1] The plaintiff then produced records of all payments made between his attorney's firm and the treating physicians, including letters of protection.

The plaintiff moved for a protective order from the defendants' request to depose his attorney, arguing inquiry into his attorney's financial information invaded the attorney-client privilege. The court denied the motion. The plaintiff's attorney was deposed.

Prior to trial, the plaintiff moved in limine to preclude the admission of his lawyer's payments to his treating physicians based on attorney-client privilege, relying on *Worley v. Central Florida Young Men's Christian Ass'n*, 228 So. 3d 18 (Fla. 2017). The trial court denied the motion. The plaintiff then moved the court to reconsider its ruling; the court denied the motion.

The defendants then moved to prevent comments about the defendant law firm's relationship with the same treating physicians. The trial court granted that motion.

Prior to trial, defense counsel announced his intention to call the plaintiff's attorney as a witness. The trial court expressed concern about whether the attorney and her co-counsel had considered Florida Bar Rule 4-3.7, which prohibits an attorney from acting as counsel and a witness in the same case. The plaintiff's attorney left the courtroom. When she returned, she told the court she would no longer serve as counsel.

Plaintiff's counsel again specifically called the court's attention to *Worley*. There, the supreme court held that certain information concerning treating physicians and their relationship with trial counsel is protected by attorney-client privilege and not discoverable. *Worley*, 228 So. 3d at 23. The trial court responded that it had already gone through this and the "horse has left the barn." The court denied counsel's request to revisit the issue.

---

[1] The court relied on existing precedent that permitted this discovery prior to the supreme court's decision in *Worley v. Central Florida Young Men's Christian Ass'n*, 228 So. 3d 18 (Fla. 2017). *Brown v. Mittelman*, 152 So. 3d 602 (Fla. 4th DCA 2014); *Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay*, 133 So. 3d 1178 (Fla. 4th DCA 2014).

During voir dire, defense counsel asked the jurors whether they would have an issue with the plaintiff's attorney's credibility because she was both the plaintiff's attorney and a witness in the trial. One juror expressed that it would be foolish not to question the attorney's credibility since she knows too much. The plaintiff asked the court to strike the juror and moved for a mistrial. The court struck the juror, but reserved ruling on the motion for mistrial. The court ultimately denied the motion.

At trial, the plaintiff testified he first saw a chiropractor, and later an orthopedist. He had neck surgery, which rendered his pain more manageable. At the time of trial, his medical bills totaled $184,976.

He did not remember who referred him to either doctor. He did not remember telling anyone who referred him to those doctors. However, his cousin testified that the plaintiff told him his attorney referred him to his treating physicians.

On cross examination, defense counsel asked the plaintiff what he knew about his attorney's relationship with his treating physicians. He responded that he was unaware of any relationship. And, when asked what he knew about his attorney paying the doctors large amounts of money over the years, he declined any knowledge.

Before the treating orthopedist testified, the plaintiff proffered his testimony would show the defendant law firm also referred clients to the treating physicians. The court adhered to its prior ruling that this evidence was irrelevant and inadmissible.

The treating orthopedist reviewed the plaintiff's MRI, which revealed cord compression, abnormal discs, and edema in the bone and the neck where there was cord compression. The surgery confirmed his impression that the MRI showed the plaintiff's discs were very fragile. He opined the plaintiff's symptoms were caused by trauma from the accident; not from age-related processes.

The orthopedist ultimately assigned a permanent impairment rating of 12% to the body as a whole. He estimated the plaintiff's future care would cost $3,000 to $5,000 a year. A radiologist opined the plaintiff's symptoms were related to the injuries from the accident, and not from other age-related spinal changes.

A trauma neurosurgeon hired by the defendants conducted a compulsory medical examination of the plaintiff. In reviewing the

plaintiff's MRI, he saw no signs of trauma. He disagreed that cervical surgery was necessary. He testified that it was "pure speculation" that the plaintiff would need future surgery. He found the medical bills for the cervical fusion excessive and not in line with the usual and customary fees for such a procedure.

Prior to the defense calling the plaintiff's attorney as a witness, the plaintiff renewed his motions to preclude her testimony and for mistrial. The court denied both motions.

During her testimony, defense counsel questioned the plaintiff's attorney about the letters of protection, her name appearing on the plaintiff's medical records, and the amount of money paid by her firm's trust account to the treating physicians over the course of five years. She admitted to having a personal relationship with a couple of the doctors associated with the treating physicians. She also admitted she refers some of her clients to those treating physicians and negotiates bills on their behalf.

During the jury's deliberation, it submitted the following question: "When did the relationship between [the attorney] and plaintiff [begin]?" The court responded the record did not indicate a date.

The jury found the defendant driver negligent, but apportioned 57½% of the fault to the plaintiff and 42½% to the defendant. It determined damages to be $20,916.33.

The plaintiff subsequently moved for a new trial, arguing the trial court erred in permitting the defense to admit evidence and elicit testimony regarding payments from his attorney's trust account to the treating physicians. The court denied the motion.

The trial court entered final judgment for the defendants. From this judgment, the plaintiff now appeals.

The plaintiff argues the trial court's errors in admitting irrelevant financial information concerning the treating physicians, requiring his attorney to testify, and excluding similar evidence concerning the defendant law firm, entitle him to a new trial. The defendants respond that any error was harmless because the plaintiff's attorney's limited testimony on these issues could not have impacted the verdict.

We review orders on motions for new trial for an abuse of discretion. *Botta v. Florida Power & Light Co.*, 197 So. 3d 1222, 1224 (Fla. 4th DCA

2016).

The plaintiff argues the financial relationship evidence and his attorney's relationship with his treating physicians is not discoverable and was not admissible at trial. This evidence was irrelevant and created insurmountable prejudice. The defendants respond the trial court did not err in admitting the evidence because it did not implicate attorney-client privileged communications and was relevant to the issue of bias.

"'A trial judge's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion.'" *Hayes v. Wal-Mart Stores, Inc.*, 933 So. 2d 124, 126 (Fla. 4th DCA 2006) (citation omitted). However, "'[t]he trial court's discretion is limited by the rules of evidence.'" *Id.* (citation omitted).

Here, after discovery, but before trial, the Supreme Court of Florida held that "the financial relationship between a plaintiff's law firm and the plaintiff's treating physician is [not] discoverable." *Worley*, 228 So. 3d at 22. In its analysis, the supreme court held that *Allstate Insurance Co. v. Boecher*, 733 So. 2d 993 (Fla. 1999), which permitted the discovery of financial information between law firms and expert witnesses, is inapplicable to treating physicians. *Worley*, 228 So. 3d at 22.

The supreme court held that bias can be established by admitting letters of protection, which can demonstrate that the physician has an interest in the litigation's outcome or by providing evidence that the physician's practice was based entirely on patients covered by letters of protection. *Id.* at 23–24. But, attorney-client privilege protects whether the plaintiff's lawyer referred the plaintiff to a particular physician. *Id.* at 25. Also protected are documents pertaining to agreements between a law firm and treating physicians and the names of other clients who have been referred to treating physicians. *Id.*

The defendants claim *Worley* is inapplicable because it deals with the narrow issue of *Boecher's* application to treating physicians, rendering other statements in the opinion mere dicta. We disagree. While *Worley* discussed the discovery issue, and not the admissibility of evidence, it is dispositive of the issue here.

Here, pre-*Worley*, the trial court compelled the discovery of the plaintiff's attorney's financial relationship with the various treating physicians. The documents included: (1) payments by the plaintiff's attorney's firm to the treating physicians over five years and (2) letters of protection between the plaintiff's attorney's firm and the treating

physicians. The court also compelled the deposition and trial testimony of the plaintiff's attorney regarding these documents.

Post-*Worley*, that discovery is no longer permitted as it violates attorney-client privilege. While letters of protection may be admitted to establish bias, any further inquiry regarding the "cozy agreement" between a law firm and a treating physician is disallowed. *Id.* at 26. If that information is not discoverable, it certainly is not admissible.[2]

We similarly find error in the trial court compelling the plaintiff's attorney to testify at trial. While the plaintiff's attorney was initially identified as the person with the most knowledge of the financial records, the firm identified an alternative individual who could testify prior to the deposition. In compelling the plaintiff's attorney's testimony, the court forced her to testify regarding her trust account, payments made to the treating physicians, and her personal relationships with these physicians. In short, she was compelled to testify to the prejudice of her own client.

"[Florida Rule of Civil Procedure] 1.310(b)(6) does not require—or for that matter even contemplate—that the corporation produce the witness with the 'most knowledge' on the specified topic(s), and the witness is not required to possess any personal knowledge at all." *Carriage Hills Condo., Inc. v. JBH Roofing & Constructors, Inc.*, 109 So. 3d 329, 334 (Fla. 4th DCA 2013). The rule "gives the corporation being deposed more control by permitting it to select and prepare a witness to testify on its behalf." *Id.* at 335.

Here, however, the court compelled the attorney to attend a deposition and testify at trial. Once this testimony was admitted, it became the central focus of the defendants' case. Using this evidence, the defendants argued the attorney essentially created the lawsuit. The jury asked the court about when the attorney's relationship with the plaintiff began.

The plaintiff next argues the trial court erred in excluding evidence that the defendant law firm had made similar referrals and had similar financial relationships with the treating physicians. We agree, but because we hold that the evidence of the plaintiff's attorney's referral of

---

[2] The defendants also argue the plaintiff waived any attorney-client privilege when he told his cousin that his attorney referred him to his treating orthopedist. While the plaintiff may have waived this one piece of information, he did not waive the privilege as to his other treating physicians and his attorney's trust account information.

the plaintiff to his treating physicians and other payments to those physicians is protected by attorney-client privilege, it is unnecessary for us to address this issue further. Such evidence from the defendant law firm is similarly protected by attorney-client privilege.

The central theme of the defendants' case was the plaintiff's attorney's financial relationship with the treating physicians. It was raised in opening statements, throughout testimony, and in closing argument. Because we now hold *Worley* prohibits the discovery and admission of attorney-client privileged information concerning the relationship between the plaintiff's attorney and the treating physicians, and the financial information concerning that relationship, we reverse and remand the case for a new trial.

*Reversed and remanded for a new trial.*

GROSS and DAMOORGIAN, JJ., concur.

\*  \*  \*

**Not final until disposition of timely filed motion for rehearing.**