# Supreme Court of Florida

No. SC19-1118

**BRENT A. DODGEN,**
Petitioner,

vs.

**KAITLYN P. GRIJALVA,**
Respondent.

October 14, 2021
**<u>CORRECTED OPINION</u>**

PER CURIAM.

This case involves a discovery dispute in an automobile negligence case in which the plaintiff, Respondent Kaitlyn Grijalva, seeks to discover from the defendant, Petitioner Brent Dodgen, the financial relationship, if any, between Dodgen's nonparty insurer and his expert witnesses. After being ordered to provide the discovery, Dodgen filed a petition for writ of certiorari in the Fourth District Court of Appeal. We have for review *Dodgen v. Grijalva*, 281 So. 3d 490 (Fla. 4th DCA 2019), in which the Fourth District denied Dodgen's petition. *Id.* at 490. In denying the petition, however, the

Fourth District opined that this Court's decision in *Worley v. Central Florida Young Men's Christian Ass'n*, 228 So. 3d 18 (Fla. 2017), which the Fourth District interpreted as having held that the financial relationship between a plaintiff's law firm and treating physicians is never discoverable, has resulted in the disparate treatment of plaintiffs and defendants. *See Dodgen*, 281 So. 3d at 490-92. The Fourth District then certified the following question as being one of great public importance:

> WHETHER THE DECISION IN *WORLEY* . . . SHOULD BE APPLIED TO PROTECT A DEFENDANT'S INSURER THAT IS NOT A PARTY TO THE LITIGATION FROM HAVING TO DISCLOSE ITS FINANCIAL RELATIONSHIP WITH EXPERTS RETAINED FOR PURPOSES OF LITIGATION, INCLUDING THOSE THAT PERFORM COMPREHENSIVE MEDICAL EXAMINATIONS UNDER FLORIDA RULE OF CIVIL PROCEDURE 1.360?

*Id.* at 492 (citation omitted). We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

To more precisely express the dispositive issue presented in this case—a case involving certiorari review by the district court of a discovery order—we reframe the certified question as follows:

> Whether it is a departure from the essential requirements of law to permit discovery regarding the financial relationship between a defendant's nonparty insurer and an expert witness retained by the defense?

And we answer this question in the negative. We thus approve the result reached by the Fourth District. Because, as the Fourth District itself acknowledged, *Worley* is not applicable, we decline to readdress the holding or analysis adopted in *Worley*.

We begin by reviewing *Worley* and then the background in this case. We next address Grijalva's two jurisdictional challenges, both of which are meritless. Lastly, we explain why we answer the rephrased question in the negative.

### *WORLEY*

In *Worley*, the defendant sought certain discovery "in an effort to establish the existence of a referral relationship between [the plaintiff's] attorneys and her treating physicians." 228 So. 3d at 20. The requested information included asking the plaintiff herself "if she was referred to her specialists by her attorneys." *Id.* After the trial court ordered that the information be produced, the plaintiff "filed a petition for writ of certiorari with the Fifth District." *Id.* at 21. The Fifth District denied the petition, finding "no error regarding the trial court's order," and certified conflict with a decision of the Second District Court of Appeal. *Id.* at 22.

On discretionary review, this Court quashed the Fifth District's decision, while narrowly framing the certified conflict issue as "whether the attorney-client privilege protects a party from being required to disclose that his or her attorney referred the party to a physician for treatment." *Id.* at 20. In addition to answering that narrow question in the affirmative, *id.* at 25, *Worley* also held that "the attorney-client privilege protects . . . a law firm from producing documents related to a possible referral relationship between the firm and its client's treating physicians." *Id.* at 22. In reaching its holdings, *Worley* also "consider[ed]" the more general issue of "whether the financial relationship between a plaintiff's law firm and the plaintiff's treating physician is discoverable." *Id.*

*Worley*'s analysis turned in part on distinguishing this Court's earlier decision in *Allstate Insurance Co. v. Boecher*, 733 So. 2d 993 (Fla. 1999), which held that "discovery requests . . . propounded directly to a party regarding the extent of that party's use of and payment to a particular expert" were permissible. *Id.* at 994. In *Boecher*, we authorized such discovery because it is "directly relevant to a party's efforts to demonstrate to the jury the witness's bias." *Id.* at 997. In the wake of *Boecher*, certain district court

- 4 -

decisions had "extended *Boecher* to allow discovery of the financial relationship between law firms and treating physicians." *Worley*, 228 So. 3d at 23. *Worley* disagreed with the reasoning of those district courts, concluding "that the relationship between a law firm and a plaintiff's treating physician is not analogous to the relationship between a party and its retained expert." *Id.* *Worley* reasoned that, whereas the plaintiff in *Boecher* "sought discovery from the other party, in that case Allstate Insurance," the plaintiff's law firm in *Worley* was "not a party to the litigation." *Id.* And *Worley* distinguished treating physicians from "experts who had been hired for the purposes of litigation." *Id.* (noting that treating physicians "typically testif[y] . . . concerning [their] . . . own medical performance on a particular occasion and [do] not opin[e] about the performance of another" (alterations in original) (quoting *Fittipaldi USA, Inc. v. Castroneves*, 905 So. 2d 182, 186 (Fla. 3d DCA 2005))).

After distinguishing *Boecher*, *Worley* concluded that although "the evidence code allows a party to attack a witness's credibility based on bias," *id.* (citing § 90.608(2), Fla. Stat. (2015)), the credibility of the treating physician at issue could be attacked in certain ways that did not require "further discovery into a possible

- 5 -

relationship between the physician and the plaintiff's law firm," as that discovery "would require the production of communications and materials that are protected by attorney-client privilege," *id.* at 24. Circling back to the certified-conflict issue, *Worley* held that the attorney-client privilege "precludes defense counsel from asking a plaintiff whether his or her attorney referred the plaintiff to a physician for treatment." *Id.* at 24.[1]

## THIS CASE

Dodgen (the defendant) filed a motion for protective order in the trial court seeking to preclude Grijalva (the plaintiff) from discovering information that, if it exists, would establish a financial relationship between Dodgen's expert witnesses and his liability insurer, and between those witnesses and his defense law firm. *Dodgen*, 281 So. 3d at 490. After the trial court denied Dodgen's motion, Dodgen petitioned the Fourth District for a writ of certiorari, arguing in pertinent part that the trial court's order departed from the essential requirements of the law, namely *Worley*.

---

1. *Worley* offered certain additional reasons for declining to uphold the discovery order, *see Worley*, 228 So. 3d at 25-26, but none have any relevance to our decision here.

*Id.* at 491.  Dodgen reasoned that *Worley* must equally apply to defendants, with the result being that "the financial relationship between a defendant's law firm or insurance company and expert witnesses is no longer discoverable."  *Id.*[2]

After recognizing that Florida law has long allowed discovery of certain financial-bias information, *see id.* (citing *Boecher*, 733 So. 2d at 997, and *Springer v. West*, 769 So. 2d 1068, 1069 (Fla. 5th DCA 2000)), the Fourth District rejected Dodgen's argument, reasoning that the discovery prohibition adopted in *Worley* "was not broadly written to cover discovery sought from the defense side of a case."  *Id.*  However, the Fourth District concluded that the application of *Worley* solely to the plaintiff's side of the case has "resulted in disparate and possibly unfair treatment of plaintiffs and defendants."  *Id.* at 492.  And the Fourth District certified the question set forth above.  *Id.*

---

2.  While the case was pending in the district court, Grijalva withdrew her discovery request as to Dodgen's defense law firm. *Dodgen*, 281 So. 3d at 491.

**JURISDICTION**

Grijalva challenges our jurisdiction on the ground that Dodgen's notice to invoke this Court's discretionary jurisdiction was purportedly not timely filed "within 30 days of rendition of the order to be reviewed," as required by Florida Rule of Appellate Procedure 9.120(b). She argues that Dodgen was required to file the notice within thirty days of the date the Fourth District issued an order stating in pertinent part that the "petition for writ of certiorari is denied" and that "[a]n opinion will follow," even though the Fourth District did not issue that opinion until weeks later. This argument is meritless, most obviously because at the time the Fourth District issued its order, there was still judicial labor to be performed. *See Whitaker v. Jacksonville Expressway Auth.*, 131 So. 2d 22, 23 (Fla. 1961) ("[W]hen the labor of the court has terminated with its final decision and the issuance of its mandate thereon, it no longer has jurisdiction to enter a certificate [certifying a question of great public importance.]"). The flawed nature of Grijalva's argument is underscored by the fact that a motion for written opinion filed under rule 9.330(a)(2)(D) tolls rendition of an appellate order. *See St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 675 So.

2d 590, 592 (Fla. 1996) ("[A] district court's order is not 'rendered' until there has been a disposition of all motions relative to that order."); *see also* Fla. R. App. P. 9.020(i) (Rendition of an Appellate Order). And yet, under Grijalva's logic, a district court order that by its very own terms indicates that a written opinion will follow is to be treated as "rendered" on the day the unelaborated order is issued. We decline to reach such an absurd result.

Grijalva next challenges our jurisdiction on the ground that the Fourth District purportedly failed to "pass[] upon" the certified question, as required by article V, section 3(b)(4) of the Florida Constitution. We disagree. The question certified was passed upon—that is, decided—by the Fourth District. In addressing whether *Worley* "should be applied" to the discovery controversy in this case, the Fourth District decided that by its terms *Worley* could not be applied to provide the protection from discovery sought by the defendant. *Dodgen*, 281 So. 3d at 491-92. Admittedly, the Fourth District's opinion invites this Court to readdress the analysis adopted in *Worley*, but that does not mean the certified question itself seeks an opinion on an issue that was not decided by the district court. We have jurisdiction.

**ANALYSIS**

When a discovery order "depart[s] from the essential requirements of the law and results in material injury for the remainder of the case that cannot be corrected on appeal," relief by way of certiorari review may be granted. *Paton v. GEICO Gen. Ins. Co.*, 190 So. 3d 1047, 1052 (Fla. 2016). "But not every erroneous discovery order creates certiorari jurisdiction because some orders are subject to adequate redress by plenary appeal from a final judgment." *Allstate Ins. Co. v. Langston*, 655 So. 2d 91, 94 (Fla. 1995) (citing *Martin-Johnson, Inc. v. Savage*, 509 So. 2d 1097, 1100 (Fla. 1987)). Moreover, a "departure from the essential requirements of the law . . . is something more than a simple legal error." *Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003). It requires "a violation of a clearly established principle of law." *Id.*

> "[C]learly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.

*Id.* at 890.

- 10 -

Here, the Fourth District concluded that the discovery issue in *Worley* was distinguishable. *See Dodgen*, 281 So. 3d at 491 ("*Worley* was not broadly written to cover discovery sought from the defense side of a case."). We agree. *Worley* thus cannot form the basis for concluding that the discovery order at issue departs from "clearly established law." *Kaklamanos*, 843 So. 2d at 890.

As noted above, *Worley* addressed a narrowly framed certified conflict question: "whether the attorney-client privilege protects a party from being required to disclose that his or her attorney referred the party to a physician for treatment." *Worley*, 228 So. 3d at 20. That is obviously not the issue presented in this case. Although *Worley* went beyond that narrow issue, and although *Worley*'s use of the term "a party" might suggest that the decision could apply to both sides in litigation, *Worley* was clearly decided in a plaintiff-only context. Indeed, *Worley* repeatedly referenced "treating physicians" and "treatment." *See, e.g.*, *id.* at 24 ("[T]he conflict issue before this Court [is] whether the attorney-client privilege precludes *defense counsel from asking a plaintiff* whether his or her attorney referred the plaintiff to *a physician for treatment.*" (emphasis added)). And *Worley* turned in part on the

notion that "treating physicians" are distinguishable from "hired" experts. *Id.* at 23. *Worley* thus addressed a specific type of plaintiff witness that has no mirror image on the defense side. Even if it can be argued that a compulsory medical examiner should be viewed as analogous to a treating physician, nothing in *Worley* suggests its decision was intended to apply to any witnesses other than those "attempting to make [their] patient[s] well." *Id.* (alterations in original) (quoting *Frantz v. Golebiewski*, 407 So. 2d 283, 285 (Fla. 3d DCA 1981)). In that regard, *Worley* stands in stark contrast to *Elkins v. Syken*, 672 So. 2d 517 (Fla. 1996), in which this Court expressly noted that its holding limiting the scope of discovery of financial information from the defense medical expert "affect[ed] both plaintiffs and defendants alike" and was "in no way intended to favor either plaintiffs or defendants." *Id.* at 522.

Because *Worley* in no way speaks to the discoverability of the financial relationship between a defendant's nonparty insurer and the defendant's experts, the discovery order at issue here did not violate a "principle of law" that was "clearly established" by *Worley*. *Kaklamanos*, 843 So. 2d at 889. The Fourth District thus correctly concluded that *Worley* did not support granting certiorari relief.

Notably, the Fourth District also cited the Fifth District's decision in *Springer,* a decision that is actually on point. There, the defendant in an automobile negligence case sought "a writ of certiorari to review a discovery order compelling him to answer interrogatories regarding *the relationship between his trial expert and his liability insurer.*" *Springer,* 769 So. 2d at 1069 (emphasis added). In denying the defendant's petition, *Springer* quite reasonably concluded that *Boecher* was applicable, even though the interrogatories at issue sought "information regarding the relationship between [the defendant's] insurer, a nonparty, and the expert, whereas in *Boecher,* the insurer was a party." *Id. Springer* explained:

> Where an insurer provides a defense for its insured and is acting as the insured's agent, the insurer's relationship to an expert is discoverable from the insured. To hold otherwise would render *Boecher* meaningless in all but a small class of cases. Similarly, a defendant may question a plaintiff about any relationship between his or her attorney and the plaintiff's trial expert. In both cases, the information sought is relevant to the witness's bias and will enhance the truth-seeking function and fairness of the trial, as intended by *Boecher.*

*Id. Springer* thus held that the financial relationship between a defendant's nonparty insurer and the defense experts is

discoverable, while additionally concluding that the discovery rules

should be applied evenhandedly to both parties.

Dodgen argues that the reasoning of *Springer* is "no longer

valid" after *Worley*.  But even if *Worley* might be said to undermine

some of the language in *Springer*, the issue in *Springer* was wholly

distinct from the issue in *Worley*.  The issue in *Springer* was,

however, the same issue presented in this case.  Therefore, the

circuit court here did not depart from the essential requirements of

law in permitting discovery related to the financial relationship

between Dodgen's insurer and defense experts.  Indeed, the circuit

court's ruling was dictated by law that was binding on the circuit

court, namely the rule articulated by the district court in *Springer*.[3]

And we see no basis for revisiting the rule laid down by the *Springer*

court.

Although the Fourth District reached the correct result in

denying Dodgen's petition, we recognize the concern about what the

---

3.  The fact that *Springer* controlled the circuit court's ruling
in this case may well explain why the Fourth District declined to
address any of Dodgen's other arguments.  We similarly do not
address those arguments.

Fourth District described as a post-*Worley* uneven playing field skewed in favor of plaintiffs when it comes to the discovery of financial-bias relationships between the parties' medical experts and nonparty representatives. But whether *Worley* was wrongly decided or whether some other factor has caused the purportedly uneven playing field, is not properly before us. The holding of *Worley* should be reexamined only in a case in which it is actually at issue. And here, as the Fourth District acknowledged, *Worley* is not applicable.

## CONCLUSION

We answer the rephrased question in the negative. Because the trial court's order permitting discovery related to the financial relationship between Dodgen's insurer and defense experts was consistent with established law, we agree with the Fourth District that the trial court did not depart from the essential requirements of the law in denying Dodgen's motion for protective order. Accordingly, we approve the result reached by the Fourth District.

It is so ordered.

CANADY, C.J., and LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.

LABARGA, J., concurs in result.

POLSTON, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

POLSTON, J., dissenting.

As explained in my dissenting opinion in *Younkin v. Blackwelder*, No. SC19-385 (Fla. Oct. 14, 2021), I would recede from *Worley v. Central Florida Young Men's Christian Ass'n*, 228 So. 3d 18 (Fla. 2017), and require disclosures equally from plaintiffs and defendants. Accordingly, I respectfully dissent.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

    Fourth District – Case No. 4D19-1010

    (Broward County)

Kansas R. Gooden, Miami, Florida, and Kevin D. Franz, Boyd & Jenerette, PA, Boca Raton, Florida,

    for Petitioner

Douglas F. Eaton of Eaton & Wolk, PL, Miami, Florida,

    for Respondent

William W. Large of Florida Justice Reform Institute, Tallahassee, Florida; and Jason Gonzalez and Amber Stoner Nunnally of Shutts & Bowen LLP, Tallahassee, Florida,

for Amici Curiae Chamber of Commerce of the United States of America and Florida Justice Reform Institute

John Hamilton of Law Office of John Hamilton of Tampa, P.A., San Antonio, Florida; and Patrick A. Brennan of HD Law Partners, P.A., Tampa, Florida,

for Amici Curiae Dr. Michael Foley and Dr. John Shim

Bryan S. Gowdy of Florida Justice Association, Jacksonville, Florida,

for Amicus Curiae Florida Justice Association